UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK SCOTT STRUNIAK<br>AYGUL MINIGALINA<br>7821 Candlewood Drive<br>Alexandria, VA 22306<br><br>　　　　Plaintiffs<br><br>v.<br><br>LORETTA LYNCH, Attorney General<br>The U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC<br><br>JEH CHARLES JOHNSON, Secretary<br>U.S. Department of Homeland Security<br>650 Massachusetts Avenue, NW<br>Washington, DC  20001<br><br>LEON RODRIGUEZ, Director<br>U.S. Citizenship and Immigration Services<br>20 Massachusetts Avenue, N.W.<br>Washington, DC  20529<br><br>SARAH TAYLOR, District Director<br>U.S. Citizenship and Immigration Services<br>Washington, DC District Office<br>2675 Prosperity Avenue<br>Fairfax, Virginia 20598<br><br>KIMBERLY ZANOTTI, Field Office Director<br>U.S. Citizenship and Immigration Services<br>Washington, DC Field Office<br>2675 Prosperity Avenue<br>Fairfax, Virginia 20598<br><br>　　　　Defendants | Civ. No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiffs, FRANK SCOTT STRUNIAK and AYGUL MINIGALINA, through

undersigned counsel, complain of the Defendants, LORETTA LYNCH, Attorney General, the

U.S. Department of Justice; JEH CHARLES JOHNSON, Secretary, U.S. Department of

Homeland Security; LEON RODRIGUEZ, Director, U.S. Citizenship and Immigration Services;

1

SARAH TAYLOR, District Director of U.S. Citizenship and Immigration Services Washington, DC District Office; and KIMBERLY ZANOTTI, Field Office Director of U.S. Citizenship and Immigration Services Washington, DC Field Office, as follows:

## I. PREFATORY STATEMENT

1. This action is brought to protect the statutory and constitutional rights of the Plaintiffs, which have been abridged by the Defendants' actions in construing and applying the Adam Walsh Act to their immediate relative visa petition.

2. The right to marry is among the most important liberties protected by the Due Process Clause, and the U.S. Supreme Court has characterized marriage as the foundation of the family and our society. *Maynard v. Hill*, 125 U.S. 190, 210-11 (1888); *see also Loving v. Virginia*, 388 U.S. 1, 12 (1967) ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."). In turn, the history of our immigration laws underscores the vital importance of family unity and preservation of the family unit. H. Rep. No. 82-1365, at 29 (1952); *see also* H. R. Rep. No. 101-723(I), at 40 (1990) (describing family reunification as a "cornerstone of U.S. immigration policy"). However, marriage can only fulfill its essential societal role if spouses – including a U.S. citizen married to a noncitizen – are at liberty to live together. *See Moore v. City of East Cleveland*, 431 U.S. 494, 500-03 (1977) (holding that the right to marriage includes the associational right of a husband and wife to live together without arbitrary governmental restriction). The right to live with one's spouse, whether citizen or noncitizen, is an established constitutional right that the government may not arbitrarily restrict or deny; any interference with that fundamental liberty interest requires evidence that a valid restriction applies. *See Griswold v. Conn.*, 381 U.S. 479, 495 (1965) ("The entire fabric of the Constitution and the purposes that clearly underlie its specific guarantees demonstrate

2

that the rights to marital privacy and to marry and raise a family are of similar order and magnitude as the fundamental rights specifically protected."). Here, no such evidence has been adduced by the Defendants to support denial of the Plaintiffs' visa petition – and consequent interference with their right to live together in this country as husband and wife – under the Adam Walsh Act.

3.  This civil action is brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, the federal question statute, 28 U.S.C. § 1331, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, and the Constitution of the United States, seeking review of a decision by Defendant U.S. Citizenship and Immigration Services ("USCIS") denying a Form I-130, Petition for Alien Relative ("I-130 Petition) filed  by the U.S. citizen Plaintiff, Frank Scott Struniak, on behalf of his noncitizen spouse, Plaintiff Aygul Minigalina.  On May 15, 2012, Defendant USCIS denied Mr. Struniak's petition for his spouse because it found that he is barred from filing such petition owing to his past conviction for a "specified offense against a minor," as defined in the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 8 U.S.C. § 1154(a)(1)(A)(viii). The I-130 Petition, if approved, would have conferred "immediate relative" status, pursuant to 8 U.S.C. § 1151(b)(2)(A)(i), on Ms. Minigalina.  "Immediate relative" status permits a noncitizen to apply for lawful permanent residence and, eventually, U.S. citizenship.

4.  Defendant USCIS's denial of Mr. Struniak's I-130 Petition on behalf of his spouse is arbitrary and capricious, not in accordance with law, and in excess of statutory jurisdiction and authority, in violation of Section 706(2)(C) of the APA.  5 U.S.C. § 706(2).  In addition, the agency's decision is in violation of the Plaintiffs' liberty interests protected by the Due Process Clause of the Fifth Amendment of the U.S. Constitution. *See, e.g., Landon v.*

*Plasencia*, 459 U.S. 21, 34-35 (1982) (holding that the right to live with and not be separated from one's immediate family is "a right that ranks high among the interests of the individual" and that cannot be taken away without procedural due process).

5. Defendants' action has caused – and will continue to cause – irreparable harm to the Plaintiffs. Defendants' denial of the I-130 Petition prevents Mr. Struniak's spouse from obtaining lawful status in the United States, which is their home. Defendants' unreasonable action prevents Mr. Struniak and Ms. Minigalina, who have been married for over eight years, from residing together as husband and wife and continuing to build their lives together in the United States. Consequently, the Plaintiffs seek declaratory and injunctive relief as detailed in this complaint.

## II. JURISDICTION

6. The Plaintiffs seek judicial review under 5 U.S.C. § 701 *et seq.*, the Administrative Procedure Act ("APA"), and 28 U.S.C. § 1331 (federal subject matter jurisdiction), as well as 8 U.S.C. § 1101 *et seq.,* the Immigration and Nationality Act ("INA"), and the Constitution of the United States. Original jurisdiction is vested in this Court by 8 U.S.C. § 1329 (jurisdiction of the district courts), 28 U.S.C. § 1346(a)(2) (civil actions against the United States), and 28 U.S.C. § 2201 (declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiffs.

### A.    Subject Matter Jurisdiction

7. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial therefore, or failure

4

to act." 5 U.S.C. § 551(13).  Agency action subject to judicial review includes the denial of a

Form I-130, Petition for Alien Relative filed pursuant to Section 204(a)(1)(A)(i) of the INA,

8 U.S.C. § 1154(a)(1)(A)(i), because USCIS's denial of the Petition constitutes a "final

agency action for which there is no other adequate remedy in a court...." 5 U.S.C. § 704.

The standards to be applied on review are governed by 5 U.S.C. § 706.  *Heckler v. Chaney*,

470 U.S. 821, 828 (1985).

8. The APA does not independently provide a basis for subject matter jurisdiction.  *Califano v.*

*Sanders*, 430 U.S. 99, 107 (1977).  However, the federal question statute, codified at 28

U.S.C. § 1331, gives federal courts jurisdiction over a suit that arises under a right of action

created by the APA.  *See Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is

common ground that if review is proper under the APA, the District Court ha[s] jurisdiction

under 28 U.S.C. § 1331.").

9. Federal courts review administrative actions under the APA to determine whether the agency

acted arbitrarily, capriciously, abused its discretion, or acted otherwise not in accordance

with law.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citing 5 U.S.C. §

706(2)(A)).  The requirement that agency action not be arbitrary and capricious requires the

agency to "examine the relevant data and articulate a satisfactory explanation for its action."

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463

U.S. 29, 43 (1983).  The agency must take the necessary steps to explain its actions in a

manner that "will enable the court to evaluate the agency's rationale" at the time of its

decision.  *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

10. Three well-established canons of statutory construction also support the Court's assertion of

subject matter jurisdiction.  *See Kucana v. Holder*, 558 U.S. 233, 251 (2010) (noting that

"executive determinations generally are subject to judicial review"). First, congressional intent to limit a court's jurisdiction must be "clear and convincing" in order to preclude judicial review. *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 63-64 (1993); *Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991). Second, there is a "strong presumption" in favor of judicial review of administrative acts. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *Kucana*, 558 U.S. at 241. Third, as a general rule, courts resolve ambiguities in immigration laws in favor of the alien. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). These principles support the Court's assertion of subject matter jurisdiction to review the Plaintiffs' claims.

11. Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" As the present action is not an action to review a removal order but an action challenging a decision by Defendant USCIS to deny a Form I-130 Petition for Alien Relative, which denial was arbitrary, capricious, an abuse of discretion, contrary to law, and in excess of statutory authority, this Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. § 2201. *See* 8 U.S.C. § 1154; 8 C.F.R. §§ 204.1, 204.2(a); *see also Kucana*, 558 U.S. at 244-251.

12. Section 204(a)(1)(A)(i) of the INA provides that "any citizen of the United States" may initiate the classification of INA-defined family members by filing a petition with the

government. 8 U.S.C. § 1154(a)(1)(A)(i). In turn, the Adam Walsh Act, which amended INA § 204 and is codified at 8 U.S.C. § 1154(a)(1)(A)(viii), provides that the Department of Homeland Security ("DHS") cannot approve I-130 petitions filed by U.S. citizens who have been convicted of a "specified offense again a minor" unless DHS determines, "in [its] sole and unreviewable discretion," that the U.S. citizen "poses no risk" to his or her alien immediate relative. 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(A)(viii). In effect, the Adam Walsh Act amendments subject the broad principle articulated in INA § 204 – that "any citizen" may seek unification with his or her family member – to an exception (the "conviction" clause), which is itself subject to an exception (the "no risk" clause).

13. In its decision denying the I-130 Petition, USCIS found that Mr. Struniak was convicted of a "specified offense against a minor" because his offense meets that definition in Section 111(7) in the Adam Walsh Act. USCIS Decision Denying Petition for Alien Relative ("USCIS Dec."), at 2-3. The agency determined further that Mr. Struniak failed to demonstrate, "beyond any reasonable doubt," that he poses no risk to Ms. Minigalina, the intended beneficiary. *Id.* at 4. The agency's decision was affirmed on appeal by the Board of Immigration Appeals ("BIA") in a decision dated November 5, 2014 ("BIA Dec.").

14. Neither 8 U.S.C. § 1252(a)(2)(B)(ii) nor APA § 701(a) deprives this Court of jurisdiction over the present action, because the Plaintiffs do not seek review of USCIS's discretionary "no risk" determination in their particular case. Review of that discretionary determination is precluded under both the INA and the APA. 8 U.S.C. § 1252(a)(2)(B)(ii); APA § 701(a). Rather, the Plaintiffs challenge the agency's decision on the following grounds: (1) USCIS erred as a matter of law in failing, without a rational basis, to provide meaningful review of the substantial, relevant, and probative evidence submitted in support of the Plaintiffs' I-130

Petition; (2) USCIS erred in denying the Plaintiffs' I-130 Petition under INA §

204(a)(1)(A)(viii), because Mr. Struniak's conviction occurred 13 years prior to the effective

date of the Adam Walsh Act and applying the law's INA amendments to such a pre-

enactment conviction would produce an impermissible retroactive effect; (3) USCIS erred in

denying the Plaintiffs' I-130 Petition because it acted in excess of its delegated authority in

interpreting and applying the "no risk" clause, and thus its implementation of the INA's

Adam Walsh Act amendments is *ultra vires* to the statute; (4) The administrative scheme

under which USCIS has implemented the Adam Walsh Act amendments to the INA, as

applied to deny the Plaintiffs' I-130 Petition, arbitrarily interferes with Mr. Struniak's

constitutionally protected liberty interest in marriage and family life – in particular, his right

to live together with his wife in the United States. *See Landon*, 459 U.S. at 34-35; *Moore*,

431 U.S. at 500-03; *see also Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974)

(holding that freedom of personal choice in matters of marriage and family life is one of the

fundamental liberties protected by the Due Process Clause).

15. As the Supreme Court has made clear, a federal district court has jurisdiction over an original

suit to set aside an agency determination made in excess of the agency's delegated powers.

*Leedom v. Kyne*, 358 U.S. 184, 190-91 (1958).  The Court explained that where an action

does not seek review of a decision made within the agency's authority, but instead challenges

a decision as having been made in excess of the agency's delegated powers, the courts retain

jurisdiction over such a suit. *Id.* at 189-90 ("This Court cannot lightly infer that Congress

does not intend judicial protection of rights it confers against agency action taken in excess

of delegated powers.").

16. In addition, a marriage-based I-130 petition is a nondiscretionary application, and this Court

retains jurisdiction to review USCIS's denial of such a petition.  Unlike discretionary

applications for immigration benefits such as adjustment of status under 8 U.S.C. § 1255,

cancellation of removal under 8 U.S.C. § 1229a, or a waiver of inadmissibility under 8

U.S.C. § 1182(h) – all of which are sought by *noncitizens* – an I-130 immediate relative

petition is a nondiscretionary application to which the *U.S. citizen* petitioner has a right and a

protected liberty interest.  *See Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013); *see*

*also* Kerry Abrams, *Immigration Law and the Regulation of Marriage*, 91 Minn. L. Rev.

1625, 1646-47 (2007) ("[I]f the law in question has nothing to do with the exclusion of

immigrants or the deportation of immigrants, but instead regulates the lives of citizens – then

the plenary power doctrine may not apply at all, and Congress may be overstepping its

bounds.").  As one federal circuit court recently declared,

> Immediate relative status for an alien spouse is a right to which citizen applicants
> are entitled as long as the petitioner and spouse beneficiary meet the statutory and
> regulatory requirements for eligibility. This protected interest is entitled to the
> protections of due process.

*Id.* This is so notwithstanding the disqualifying language of the Adam Walsh Act at INA §

204(a)(1)(A)(viii).  In *Ching v. Mayorkas*, the U.S. Court of Appeals for the Ninth Circuit

rejected the government's argument that when an exception to eligibility exists, the U.S.

citizen petitioner's right to obtain the I-130 petition no longer exists, and the process is no

longer discretionary.  *Id.*  The court explained:

> This argument confuses the question of whether there is a protected interest in a
> benefit with the question of eligibility for that benefit. Virtually no government
> benefit is available to individuals without a requirement that certain conditions are
> met. The Supreme Court explained that "the welfare recipients in *Goldberg v.*
> *Kelly* [397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)] had a claim of
> entitlement to welfare payments that was grounded in the statute defining
> eligibility for them. The recipients had not yet shown that they were, in fact,

within the statutory terms of eligibility. *But we held that they had a right to a hearing at which they might attempt to do so."*

*Id.* (emphasis added).

17. The issues over which the Plaintiffs seek judicial review – (1) whether USCIS erred in failing, without a rational basis, to provide meaningful review of the substantial, relevant, and probative evidence submitted in support of the Plaintiffs' I-130 petition; (2) whether applying the INA's Adam Walsh Act amendments to Mr. Struniak's 1993 conviction yields an impermissible retroactive effect; (3) whether USCIS's implementation of the Adam Walsh Act exceeds its delegated authority and is *ultra vires*; and (4) whether the agency's interpretation and application of the Adam Walsh Act is unconstitutional as a violation of the Plaintiffs' due process rights – are predicate legal questions over which this Court retains jurisdiction. *See IQ Sys., Inc. v. Mayorkas*, 667 F. Supp. 2d 105, 109 (D.D.C. 2009) (holding that district courts "have jurisdiction to review decisions on visa petitions when the decision is based on a question of law"). As this Court has explained, "Federal courts have jurisdiction to review a 'predicate legal question that amounts to a nondiscretionary determination underlying the denial of relief.'" *Id.* (quoting *El-Baz Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *see also Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005) (holding that 8 U.S.C. § 1252(a)(2)(B) does not bar jurisdiction over nondiscretionary legal decisions); *Succar v. Ashcroft*, 394 F.3d 8, 19 (1st Cir. 2005) ("Both the Supreme Court and this court have consistently rejected arguments that Congress has eliminated judicial review of the legal question of interpretation of the statute as to whether an alien is eligible for consideration of relief." ). Because the Plaintiffs do not seek review of the agency's exercise of discretion in denying their I-130 Petition for failure to meet the "no risk" standard, but rather of legal and constitutional claims that challenge the agency's

application of the INA's Adam Walsh Act amendments to the Plaintiffs' circumstances, jurisdiction in this Court endures.

18. The agency's administrative scheme is not guided by any implementing regulations, is applied pursuant to agency memoranda that impose a legal standard of proof – "beyond any reasonable doubt" – that does not exist anywhere in the INA or the Adam Walsh Act and thus is *ultra vires*, is impermissibly retroactively as applied to convictions (like Mr. Struniak's) entered prior to enactment of the Adam Walsh Act, and is interpreted and applied more broadly than is warranted to protect the legitimate interests underlying Congress's enactment of the Adam Walsh Act. USCIS's application of that scheme to deny the Plaintiffs' I-130 Petition is a final agency action subject to judicial review under the APA when there is no other adequate remedy and federal question jurisdiction under 28 U.S.C. § 1331 applies. *See IQ Sys., Inc.*, 667 F. Supp. 2d at 109 (citing *Califano*, 430 U.S. at 107).

   **B.      Standing**

19. The Plaintiffs have standing to complain because they suffered an injury in fact – the denial of the I-130 Petition Mr. Struniak filed on behalf of his spouse – that is fairly traceable to the challenged conduct of the Defendants and can likely be redressed by a favorable decision. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing requires a plaintiff to show (1) injury in fact, (2) a causal connection between the injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision); *Kurapati v. USCIS*, 767 F.3d 1185, 1189-90 (11th Cir. 2014) (same); *Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013) (same). USCIS's denial of Plaintiffs' I-130 Petition prevents Ms. Minigalina from obtaining lawful status and residing with her husband, a native-born U.S. citizen, in the United States. Thus, the Plaintiffs have "alleged such a personal stake in the outcome of the controversy as to warrant his invocation of

11

federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 398 U.S. 186, 204 (1962)). A favorable decision by this Court will grant Plaintiffs the relief they seek – namely, reversal of USCIS's erroneous decision and a remand to the agency for re-adjudication and approval of the I-130 Petition.

### C.   Finality and Ripeness

20. USCIS's action denying the Plaintiffs' I-130 Petition constitutes "final agency action" for purposes of APA review. *See* 5 U.S.C. § 704. USCIS denied Mr. Struniak's I-130 Petition for his wife on May 15, 2012. In its decision denying the Plaintiffs' Petition, USCIS, as required by its own agency guidance, instructed the Plaintiffs to file an appeal with the Board of Immigration Appeals ("BIA") within thirty days of the denial. USCIS Dec. at 4-5. The Plaintiffs filed a timely appeal and a year and a half later, on November 5, 2014, the BIA issued a decision dismissing the appeal. BIA Dec. at 2. In its decision, the BIA concluded that it lacked jurisdiction to review USCIS's "no risk" determination or its application of the "beyond any reasonable doubt" standard of proof. *Id.* at 1-2. The denial of the Plaintiffs' petition is therefore a final agency decision, and the Plaintiffs have exhausted their administrative remedies.

21. Likewise, USCIS's decision denying the Plaintiffs' I-130 Petition is ripe for review. Determining the ripeness of administrative action for judicial review requires evaluation of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The Plaintiffs' claims are fit for judicial decision because the dispute presents legal questions and constitutional claims and there is a "concrete dispute" between

the parties. *Id.* at 812.  Furthermore, the Plaintiffs will continue to suffer significant hardship if no court reviews the denial of their I-130 Petition.

22. The Plaintiffs have "no other adequate remedy in a court" to challenge USCIS's erroneous denial of the I-130 Petition that Mr. Struniak filed on behalf of his wife.  *See* 5 U.S.C. § 704. There is no other adequate remedy in court that would prohibit APA review because the INA does not provide for federal court review of the denial of visa petitions.  *See* 8 U.S.C. §§ 1151-1378.  The option available to Mr. Struniak to submit a new I-130 Petition on behalf of his wife, and eventually obtain a decision on that petition, would not relieve the hardship caused if this Court withholds consideration of the Plaintiffs' claims that the agency's decision was erroneous and should be reversed.  *See Sharkey v. Quarantillo*, 541 F.3d 75, 90 (2d. Cir. 2008).

## III.  VENUE

23. Venue is proper under 28 U.S.C. § 1391(e)(3) because this is an action against officers and agencies of the United States in their official capacities, brought in the district where the Defendants reside.

## IV.  PARTIES

24. The Plaintiffs, FRANK SCOTT STRUNIAK and AYGUL MINIGALINA, are husband and wife and currently reside in Alexandria, Virginia.  Mr. Struniak was born September 28, 1964 and is a U.S. citizen.  Ms. Minigalina was born in Russia on October 19, 1982 and entered the United States in J-1 nonimmigrant status on September 8, 2005.  The couple married on February 17, 2007, in Alexandria, Virginia.  They have no children.

25. The Defendants, LORETTA LYNCH, Attorney General, the U.S. Department of Justice; JEH CHARLES JOHNSON, Secretary, U.S. Department of Homeland Security; LEON

RODRIGUEZ, Director, U.S. Citizenship and Immigration Services; SARAH TAYLOR, District Director of U.S. Citizenship and Immigration Services Washington, DC District Office; and KIMBERLY ZANOTTI, Field Office Director of U.S. Citizenship and Immigration Services Washington, DC Field Office, are charged by law with the statutory and regulatory obligation to determine eligibility for I-130 Petitions for Alien Relative for "immediate relatives," pursuant to 8 U.S.C. § 1154 and 8 C.F.R. § 204.1, 204.2(a).

## V. STATEMENT OF FACTS

26. Plaintiff Frank Scott Struniak met his wife, Plaintiff Aygul Minigalina, in June of 2006. They married on February 17, 2007, and have resided together in Alexandria, Virginia ever since. On April 2, 2007, Mr. Struniak filed with USCIS a Form I-130, Petition for Alien Relative, on behalf of his Ms. Minigalina ("I-130 Petition"). The I-130 Petition was supported by all required evidence and fees, including ample proof that the couple's marriage is bona fide. In April of 2008, the couple appeared as instructed at the USCIS Washington, DC District Office for an interview. Following the interview, USCIS issued a Request for Evidence ("RFE") dated April 10, 2008, asking for certified copies of police and court records pertaining to Mr. Struniak's 1993 conviction in Cambria County, Pennsylvania. Mr. Struniak timely submitted all requested evidence.

27. One year and five months later, on September 16, 2009, Mr. Struniak and Ms. Minigalina attended an InfoPass appointment at USCIS, where they inquired about the status of their pending I-130 Petition. A USCIS officer informed Mr. Struniak and Ms. Minigalina that a decision had been made, but did not provide them with the decision. On advice of counsel, Ms. Minigalina provided a sworn statement to USCIS on September 23, 2009, confirming

that she was aware of Mr. Struniak's conviction and supported her husband and their marriage.

28. On January 26, 2010, USCIS issued a second RFE, asking for certified records demonstrating that Mr. Struniak had successfully completed counseling or a rehabilitation program. In the alternative, USCIS requested a certified evaluation from a licensed professional assessing Mr. Struniak's level of rehabilitation and behavior modification. Mr. Struniak timely responded with a detailed evaluation letter from his psychologist, Dr. Elizabeth Teegarden. Six months later, on June 25, 2010, USCIS again interviewed Mr. Struniak and his wife at the Washington District Office.

29. Almost one year later, on March 15, 2011, USCIS issued a Request for Evidence and Notice of Intent to Deny ("NOID") the Plaintiffs' I-130 Petition. The NOID stated that Mr. Struniak may be ineligible to file an I-130 Petition on behalf of his wife because it appeared he was convicted of an offense set forth under sections 401(a) and (b) of the Adam Walsh Act. In order to be eligible to file the I-130 Petition, USCIS stated that Mr. Struniak was required to submit "evidence that clearly demonstrates, beyond a reasonable doubt, that [he] pose[s] no risk to the safety and well-being" of his wife.

30. On August 9, 2011, the Plaintiffs, through counsel, timely responded to the NOID. The couple argued that Mr. Struniak has never posed, nor will he pose, a risk to his wife's safety or well-being. The Plaintiffs submitted the following documentation in support of their claim: (a) Mr. Struniak's sworn statement describing the mitigating circumstances surrounding his 1993 conviction and his loving and harmonious marriage with his wife; (b) Ms. Minigalina's sworn statement discussing her husband's strong moral character, her healthy and happy marriage, and her confidence that Mr. Struniak poses her no danger; (c) a

psychological evaluation of Mr. Struniak by Dr. Pius Ojevwe, who, after conducting extensive testing, concluded that "there is no legitimate cause or substantial data to suggest that Mr. Struniak poses any danger to his current wife"; (d) a medical sexual responsiveness test by Dr. Ronald I. Weiner finding "there is no physiological assessment that indicates that Mr. Struniak has a significant level of pedophiliac interests (male or female) or ephebepilic (adolescent male or female) [interest] that would currently pose a risk to public safety"; (e) a research report showing Mr. Struniak lacks the attributes of a future sexual offender; (f) Dr. Elizabeth Teegarden's 1992 psychological evaluation of Mr. Struniak finding that he exhibited a positive orientation toward his family; (g) ten letters of support from family and friends emphasizing Mr. Struniak's good moral character and his loving and supportive partnership with his wife; (h) Mr. Struniak's conviction record; (i) photographs of Mr. Struniak and his wife; and (j) a letter from Ms. Minigalina's employer attesting to her strength, independence, and self-sufficiency.

31. On May 15, 2012, five years after Mr. Struniak filed the I-130 Petition on behalf of Ms. Minigalina, USCIS denied the petition pursuant to INA § 204, as amended by the Adam Walsh Act. Mr. Struniak and his wife, who were shocked by USCIS's decision and extremely worried about their family life, filed an appeal of the decision to the BIA on June 8, 2012. Two years and five months later, on November 5, 2014, the BIA issued a decision dismissing the Plaintiffs' appeal, asserting that it lacked jurisdiction to review either the decision or the Plaintiffs' constitutional claims.

## VI. <u>CAUSE OF ACTION</u>

32. The Plaintiffs allege four grounds for relief. First, USCIS's disregard of the Plaintiffs' substantial, relevant, and probative evidence in support of their I-130 Petition without

rational basis is arbitrary and capricious and an abuse of its discretion.  Second, the agency's

denial of the Plaintiffs' I-130 Petition under the Adam Walsh Act, based on a conviction

entered 13 years prior to its enactment, is an impermissible retroactive application of the law.

Third, USCIS's implementation of the INA's Adam Walsh Act amendments, including its

determination of whether an I-130 petitioner poses "no risk" to the beneficiary, exceeds the

scope of the statute and the agency's delegated authority and is therefore *ultra vires*.  Fourth,

USCIS's application of the INA's Adam Walsh Act amendments to deny the Plaintiffs' I-130

Petition is a violation of Mr. Struniak's constitutionally protected liberty interest in marriage

and family life, in particular his due process right to reside with his spouse in the United

States without arbitrary governmental interference.

A.     **Standards for Form I-130, Petition for Alien Relative**

33. Section 204(a) of the INA, codified at 8 U.S.C. § 1154(a), states that any citizen of the

United States may file a petition for an "immediate relative," defined in 8 U.S.C. §

1151(b)(2)(A)(i) as the U.S. citizen's child or spouse.  The Attorney General "shall" grant

the petition if the facts in the petition – that the beneficiary is actually the petitioner's spouse

or child – are true.  8 U.S.C. § 1154(b).  The Attorney General does not have discretion to

deny I-130 petitions if the petitioner is lawfully married to the beneficiary, is the biological

or adoptive parent of the child beneficiary, or is the lawful step-parent of the child

beneficiary.

34. The Adam Walsh Child Protection and Safety Act ("Adam Walsh Act") was signed into law

on July 27, 2006, in an effort to protect children from sexual exploitation and violent crime,

prevent child abuse and child pornography, promote internet safety, and honor the memory

of Adam Walsh and other child victims of crime.  *See* Adam Walsh Act, Pub. L. 109-248

(July 27, 2006) ("Adam Walsh Act").  Sections 402(a) and (b) of the Adam Walsh Act

amended sections 101(a)(15)(K), 204(a)(1)(A), and 204(a)(1)(B)(i) of the INA, 8 U.S.C. §§

1101(a)(15)(K), 1154(a)(1)(A), 1154(a)(1)(B)(i).  The amendments prohibit any U.S. citizen

who has been convicted of a "specified offense against a minor" from filing an I-130 petition

on behalf of an immediate relative "unless the Secretary of Homeland Security [] determines

that the citizen poses no risk to the alien[.]"  8 U.S.C. § 1154(a)(1)(A)(viii).

35. The term "specified offense against a minor" is defined by Section 111(7) of the Adam

    Walsh Act to include any of the following offenses against a victim who has not attained

    the age of 18 years:

    (A) An offense (unless committed by a parent or guardian) involving kidnapping;
    (B) An offense (unless committed by a parent or guardian) involving false
    imprisonment;
    (C) Solicitation to engage in sexual conduct;
    (D) Use in sexual performance;
    (E) Solicitation to practice prostitution;
    (F) Video voyeurism as described in 18 USC § 1801;
    (G) Possession, production, or distribution of child pornography;
    (H) Criminal sexual conduct involving a minor, or the use of the Internet to
    facilitate or attempt this conduct;
    (I) Any conduct that by its nature is a sex offense against a minor.

A conviction for a specified offense triggers the "conviction" clause in section 204 of the

INA and, in turn, the "no risk" clause creates an exception for U.S. citizens with such a

conviction.  *See* 8 U.S.C. § 1154(a)(1)(A)(viii).

36. USCIS did not promulgate regulations to guide the application and interpretation of the

    Adam Walsh Act amendments to the INA, and to date no regulations exist to implement

    them.  The only guidance issued by USCIS with respect to applying the "no-risk"

    determination in specific cases are the following two agency memoranda: (1) Michael Aytes,

    Assoc. Dir., Domestic Operations, *Guidance for Adjudication of Family-Based Petitions and*

*I-129F Petition for Alien Fiancé under the Adam Walsh Child Protection and Safety Act of 2006* (Feb. 8, 2007) (hereinafter "Aytes Memo"), and (2) Donald Neufeld, Acting Assoc. Dir., Domestic Operations, *Transmittal of SOP for Adjudication of Family-Based Petitions under the Adam Walsh Child Protection and Safety Act of 2006* (Sept. 24, 2008) (hereinafter "Neufeld Memo").

37. In the Neufeld Memo, USCIS announced that the legal standard of proof to be applied in making the "no-risk" determination is "beyond a reasonable doubt." Neufeld Memo at 7. The memorandum instructs USCIS adjudicators that a petitioner convicted of a specified offense against a minor must show "beyond any reasonable doubt, that he or she poses no risk to the safety or well-being of his or her intended beneficiary(ies)." *Id.* In the "no-risk" determination, the petitioner should submit evidence of counseling, certified evaluations of psychiatrists or clinic psychologists, evidence of good and exemplary service to the community, certified copies of police reports and court records, and news accounts and trial transcripts describing the nature and circumstances of the petitioner's offense. *Id.* at 8. Although a trial transcript may be "appropriate" in certain cases, it is not a requirement for showing "no-risk." *Id.* The Neufeld Memo instructs further that "given the nature and severity of many of the underlying offenses and the intent of the AWA, approval recommendations should be rare." *Id.* at 2.

### B. USCIS's Application of the INA's Adam Walsh Act Amendments to the Plaintiffs' I-130 Petition was Arbitrary and Capricious and an Abuse of Discretion

38. The first ground of relief is based on USCIS's misuse of its discretionary authority to grant or deny Plaintiffs' I-130 Petition. In exercising its discretionary authority to deny the Plaintiffs' I-130 Petition, USCIS ignored substantial evidence without a rational basis and its denial was therefore arbitrary and capricious and an abuse of discretion. 5 U.S.C. § 706(2)(A).

39. In this complaint, the Plaintiffs are not seeking review of USCIS's discretionary

determination in regard to its "no-risk" determination, but rather, they are seeking to compel

the agency to properly review the evidentiary record pursuant to its own established

procedures and the requirements of the APA. *See* U.S.C. § 706(2)(A). Although Congress

vested the Secretary of DHS with authority to make the discretionary "no-risk"

determination, that discretion is not unconstrained. The U.S. Supreme Court held the

following:

> Though the agency's discretion is unfettered at the outset, if it announces and
> follows – by rule or by settled course of adjudication – a general policy by which
> its exercise of discretion will be governed, an irrational departure from that policy
> (as opposed to an avowed alteration of it) could constitute action that must be
> overturned as "arbitrary, capricious, [or] an abuse of discretion" within the
> meaning of the Administrative Procedure Act, 5 U.S.C. 706(2)(A).

*INS v. Yang*, 519 U.S. 26, 32 (1996). Here, the agency cannot ignore or discount substantial

evidence without a rational basis. Where it does so, the agency's action is considered to be

arbitrary and capricious and an abuse of its discretion. *See* U.S.C. § 706(2)(A).

40. USCIS announced a policy to review I-130 Petitions subject to the Adam Walsh Act through

two memoranda. The Aytes Memo and the Neufeld Memo direct USCIS adjudicators to

review *all* evidence submitted by the petitioner to determine if he/she proved "beyond a

reasonable doubt" that he/she poses no risk to the beneficiary. The USCIS adjudicator, per

the requirements of the APA, must then issue a response detailing his/her decision. The D.C.

Circuit recently held that, where USCIS's judgment "was neither adequately explained in its

decision nor supported by agency precedent[,]" it "fails the requirement of reasoned decision

making under arbitrary and capricious review." *Fogo de Chao (Holdings), Inc.,* 2014 U.S.

App. LEXIS 20107, at *34-35 (citing *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012))

(internal quotations omitted). The "substantial evidence" requirement in the APA does not

permit an agency to overlook uncontested evidence on the record without an explanation. *Id.* at *50.

41. Here, USCIS failed to provide meaningful review of the substantial and relevant evidence submitted by the Plaintiffs in support of his I-130 Petition. In its May 15, 2012 denial letter, USCIS listed evidence that the Plaintiffs submitted in response to the Notice of Intent to Deny dated March 15, 2011, and then, without discussion or analysis of that evidence, stated that the Plaintiffs did not submit the full trial transcript from his 1993 criminal hearing. USCIS concluded that "without those transcripts, it would be difficult to conclude, without a reasonable doubt, that you do not pose a risk to your spouse. The transcripts would have enabled USCIS to decide whether your contention of subsequent good moral character, despite the convictions, is legitimate and would have eventually led to an assessment of no risk." USCIS Dec. at 4.

42. USCIS's policy memoranda do not list the trial transcript of the offense triggering the Adam Walsh Act determination as a requirement, nor did USCIS list this as a requirement in its Requests for Evidence or Notice of Intent Deny issued to the Plaintiffs. USCIS's total reliance on this transcript as a basis to deny the I-130 Petition is arbitrary and not based on policy guidance. Second, the statements made during Mr. Struniak's 1993 criminal hearing would not shed light on the legitimacy of his evidence of good moral character *after* the hearing. Rather, the evidence the Plaintiffs provided – evidence of Mr. Struniak's character and rehabilitation after 1993, including several psychological and medical assessments – *does* highlight Mr. Struniak's good moral character after the conviction. USCIS did not address any of this evidence, nor did it discuss why the totality of the evidence failed to prove "beyond a reasonable doubt" that Mr. Struniak poses no risk to the safety and security

of his wife.  USCIS did not explain why a nineteen-year-old transcript was determinative in the "no-risk" determination, nor did it address how the transcript would shed light on Mr. Struniak's character over the past two decades.

43. The U.S. Supreme Court requires an agency to rely on more than "a scintilla of evidence["] when making a decision. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 299 (1938).  The Court also requires that agencies determine the weight of evidence by taking into account "whatever in the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1961).  USCIS cannot base its decision on a single item of evidence, or lack thereof, but rather, must evaluate the weight to give the entirety of the evidence of record. USCIS's neglect of the substantial evidence provided by the Plaintiffs, and its complete, but unexplained, reliance on one trial transcript indicates that the agency did not make a decision "based on consideration of the relevant factors." *Maryland People's Counsel v. FERC*, 761 F.2d 768, 779 (D.C. Cir. 1985).  The agency's disregard for the extensive evidence the Plaintiffs submitted in support of the I-130 Petition is arbitrary, capricious, and a clear abuse of its discretion.

### C.    USCIS's Application of the INA's Adam Walsh Act Amendments to the Plaintiffs' I-130 Petition was Impermissibly Retroactive

44. USCIS's application of the Adam Walsh Act provisions of the INA to the Plaintiffs' I-130 Petition was an impermissibly retroactive application of the law.  The agency's denial of the I-130 Petition based upon a conviction that occurred on in 1993 – more than 13 years prior to enactment of the Adam Walsh Act on July 27, 2006 – violates the settled presumption against retroactive legislation. *See, e.g., Vartelas v. Holder*, 132 S. Ct. 1479, 1481 (2012) ("Under the principle against retroactive legislation … courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity."); *INS v. St. Cyr*,

533 U.S. 289, 320 n.45 (2001) ("[A] statute that is ambiguous with respect to retroactive application is construed under [Supreme Court] precedent to be unambiguously prospective.").

45. In assessing retroactivity, the Court must first examine the legislation to determine what temporal reach, if any, Congress prescribed for the new enactment. *See Landgraf v. USI Film Products*, 511 U.S. 244, 267-68 (1994). Congress did not prescribe the temporal reach of the Adam Walsh Act provisions in question, enacted at 8 U.S.C. §§ 1154(a)(1)(A)(viii) and (B)(i)(II). Section 402 of the Adam Walsh Act says nothing about whether the provision will apply to convictions prior to the July 27, 2006 enactment date, nor does Section 111 of the Adam Walsh Act defining the specified offenses. By contrast, other provisions of the INA expressly direct retroactive application. *See, e.g.*, INA § 101(a)(43), 8 U.S.C. § 1101(a)(43) ("aggravated felony" definition applies expressly to "conviction[s] ... entered before, on, or after" the statute's enactment date). The default rule when an enactment lacks a clear expression of an effective date is that the act is effective on enactment. *Johnson v. United States*, 529 U.S. 694, 702 (2000). According to the Supreme Court, "a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective." *St. Cyr*, 533 U.S. at 320 n.45. Therefore, Section 402 of the Adam Walsh Act became effective on the date of enactment – July 27, 2006.

46. Having found no express Congressional intent to apply the law retroactively, the dispositive question is whether application of the INA's Adam Walsh Act amendments "would have retroactive effect" that Congress did not authorize. *Landgraf*, 511 U.S. at 280. The established formulation for determining when retrospective application of a law would collide with the presumption against retroactivity, as articulated by Justice Story, requires an

assessment of whether such application would "tak[e] away or impai[r] vested rights acquired under existing laws, or creat[e] a new obligation, impos[e] a new duty, or attac[h] a new disability, in respect to transactions or considerations already past." *Society for Propagation of Gospel v. Wheeler*, 22 F. Cas. 756, 767 (CC NH 1814). The retroactivity analysis "demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *St. Cyr*, 533 U.S. at 321 (internal citation omitted). Applying the Adam Walsh Act to bar a U.S. citizen-initiated petition owing to the citizen's pre-enactment conviction is unlawful because it would almost always have an impermissible retroactive effect.

47. The Supreme Court recently reaffirmed the established anti-retroactivity principle. In *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), the LPR petitioner traveled outside of the United States after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *Id.* at 1483. Upon presenting himself for readmission, Vartelas was deemed inadmissible based on a conviction that occurred before IIRIRA's enactment. *Id.* The question presented was which legal regime governs: "the one in force at the time of conviction, or IIRIRA?" *Id.* *Vartelas* observed that "Congress did not expressly prescribe the temporal reach" of the statute in question. *Id.* at 1487. Therefore, the Court analyzed whether applying IIRIRA's travel restraint to an individual with a conviction predating its passage would have retroactive effect that Congress did not authorize. *Id.* Stated otherwise, the Supreme Court interpreted the lack of an express retroactive statement to mean that Congress did *not* intend for IIRIRA's travel restraint to operate retrospectively. Identifying the date of conviction as the relevant event, the *Vartelas* Court then analyzed whether IIRIRA's travel restraint attached a new disability to the pre-enactment conviction. *Id.* It

explained that Vartelas "presents a firm case for application of the antiretroactivity principle" because "[n]either his sentence, nor the immigration law in effect when he was convicted and sentenced" would have caused the travel restraint. *Id.*

48. Here, the Plaintiffs present an equally compelling case for application of the anti-retroactivity principle. *Vartelas* is indistinguishable from the issue presented under Section 402 of the Adam Walsh Act; the relevant event, in both cases, is the date of the petitioner's conviction. At the time of Mr. Struniak's conviction and sentencing in 1993, neither the conviction nor the immigration laws blocked him from filing an immediate relative I-130 petition on behalf of an alien spouse, nor from having that petition approved by the legacy Immigration and Naturalization Service ("INS"). The restraint imposed on Mr. Struniak undoubtedly qualifies as a "new disability" that interferes with a fundamental liberty interest – his right against arbitrary interference by the government in matters of marriage and family life. Such interference, based on conduct that occurred more than 13 years prior to the legislation that imposed the disability, is harsh penalty indeed. *See id.* at 1487 (describing a noncitizen's loss of the ability to travel abroad, owing to a past conviction, as a "harsh penalty"); *see also Atkinson v. Att'y Gen.*, 479 F.3d 222, 229 (3d Cir. 2007) (presumption against retroactivity violated by imposing limitation upon discretionary relief for alien based upon prior conviction that did not carry such a disability when entered). In effect, applying the Adam Walsh Act to bar an immediate relative petition because of a U.S. citizen petitioner's conviction that occurred before the law's effective date attaches an additional penalty to the petitioner's conviction – a penalty that existed neither at the time of the criminal conduct nor at the time the conviction was entered.

49. The Adam Walsh Act provisions of the INA are undoubtedly punitive, designed to further punish a U.S. citizen convicted of certain offenses by preventing him or her from petitioning for a spouse to reside as a lawful permanent resident in the United States. *See, e.g., State v. Williams*, 129 Ohio St. 3d 344 (Ohio Oct. 20, 2011) (finding state Adam Walsh Act registration and notification requirements punitive, not remedial, and thus impermissibly retroactive when applied to any offense committed prior to enactment of the law). Contrary to the BIA's characterizations, see *Matter of Jackson and Erandio*, 26 I&N Dec. 314, 318 (BIA 2014), there is nothing protective about the statute as applied to a petitioner – like Mr. Struniak – who is petitioning on behalf of an adult spouse with no minor children. Although Congress worded the Adam Walsh Act in terms of protecting beneficiaries from harm, the law does nothing of the sort: it does not remove the beneficiary from the petitioner's household or mandate that the beneficiary cannot live with the petitioner. The effect of the statute is solely to limit the *petitioner*'s right to file a visa petition for his spouse, which is a punitive measure designed not to protect beneficiaries but to further punish U.S. citizens for past offenses. *Cf. Smith v. Doe*, 538 U.S. 84, 100 (2003) (finding Alaska Sex Offender Registration Act non-punitive where "[t]he Act does not restrain activities sex offenders may pursue" such as changing jobs or residences).

50. The agency's retroactive application of the Adam Walsh Act imposes a new and unprecedented disability upon a past conviction as well as a new obligation by restricting the ability of a U.S. citizen to petition for his spouse based upon conduct not of the alien spouse, but of the U.S. citizen petitioner. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963) (listing as relevant factors in assessing whether a challenged law is punitive in nature whether it imposes an "affirmative disability or restraint" or "appears excessive in relation to

the alternative purpose assigned"). Such a restriction was unheard of in U.S. immigration law prior to the enactment of the Adam Walsh Act. *Cf.* 8 U.S.C. § 1154(c) (no petition can be approved where the *alien* beneficiary has previously engaged in marriage fraud). USCIS has radically altered U.S. immigration law by imposing a new obligation on the U.S. citizen petitioner to demonstrate lack of dangerousness under an exacting administrative regime, a requirement that was not present when Mr. Struniak was convicted and sentenced in 1991. And the punitive nature of the restriction imposed cannot reasonably be characterized as necessary to achieve the explicit legislative aims of the Adam Walsh Act, which are "to protect children from sexual exploitation and violent crimes, to prevent child abuse and child pornography, to promote Internet safety and to honor the memory of Adam Walsh and other child crime victims." USCIS Dec. at 1. Prohibiting Mr. Struniak from petitioning for his adult spouse in no way furthers the important objectives underlying passage of the Adam Walsh Act.

### D.   USCIS's Implementation of the INA's Adam Walsh Act Amendments Exceeds its Delegated Authority and is *Ultra Vires*

51. Pursuant to 5 U.S.C. § 706(2)(C), the Court must strike down as *ultra vires* agency rules promulgated without valid statutory authority. USCIS has exceeded its delegated authority in the following ways. First, USCIS surpassed its statutory authority when it applied the INA's Adam Walsh Act amendments to the Plaintiffs' case because the sole beneficiary of Mr. Struniak's petition is his adult wife, who does not have children. In addition, no children reside with the Plaintiffs. Congress enacted the Adam Walsh Act in order to protect *children* from sexual exploitation and violent crimes. *See* Adam Walsh Act, Pub. L. 109-248 (July 27, 2006). Congress did not pass the law to protect an adult beneficiary of a petition, who is of age for voluntary consent, from his or her petitioning spouse, whom he or she voluntarily

chose to marry.  Thus, USCIS's application of the law to petitions for adult beneficiaries is contrary to the public policy and congressional intent behind the law.  This is especially true given that no regulations have been issued to implement the Adam Walsh Act's amendments to the INA.  USCIS must therefore clarify how the Adam Walsh Act is rationally applicable to cases that do not involve child beneficiaries, particularly because the agency's overbroad application of the law interferes with a fundamental liberty interest.  *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (state action that interferes directly and substantially with the fundamental right to marry "cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests").

52. Second, USCIS exceeded its delegated authority by applying a "beyond any reasonable doubt" standard for evaluating the potential risk that a petitioner poses to his or her beneficiary spouse.  The INA is silent with respect to the legal standard of proof to be used in assessing the risk element for I-130 petitions subject to the Adam Walsh Act.  *See* 8 U.S.C. §§ 1154(a)(1)(A), (a)(1)(B).  The Adam Walsh Act itself is silent regarding the legal standard that should be applied to cases in the immigration context.  As a different standard is not specified by law, USCIS's requirement of a showing of no risk "beyond any reasonable doubt" exceeds the agency's statutory authority.

53. The "preponderance of the evidence" standard is the norm in administrative immigration adjudications unless Congress otherwise specifies.  In visa petition proceedings, the burden of proof is on the petitioner to establish eligibility for the benefit sought.  *See Brantigan*, 11 I&N Dec. at 495.  The standard of proof that the petitioner is required to meet is a preponderance of the evidence.  *Matter of Soo Ho*, 11 I&N Dec. 151, 152 (BIA 1965).  In addition to the adjudication of visa petitions, "preponderance of the evidence" is the default

standard in USCIS adjudications of *all* applications for immigration benefits.  In a 2010

decision, the USCIS Administrative Appeals Office emphasized that "[e]xcept where a

different standard is specified by law, a petitioner or applicant in administrative immigration

proceedings must prove by a *preponderance of the evidence* that he or she is eligible for the

benefit sought." *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) (citing *Matter of

Martinez*, 21 I&N De. 1035, 1036 (BIA 1997)).

54. There are instances in which Congress *has* imposed a more burdensome legal standard.  For

example, the "clear and convincing" standard of proof applies to the bona fide marriage

determination for marriages entered into after the initiation of removal proceedings against

the beneficiary. 8 U.S.C. §§ 1154(g), 1255(e)(1), 1255(e)(3).  However, in the adjudication

of I-130 petitions under the Adam Walsh Act, Congress did not designate a more

burdensome standard, as it did in other sections of the INA.  "'Where Congress includes

particular language in one section of a statute but omits it in another section of the same Act,

it is generally presumed that Congress acts intentionally and purposely in the disparate

inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United

States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).  It is therefore reasonable to

assume that Congress intended for such petitions to be adjudicated under the same standard

of proof that applies to visa petitions generally – the "preponderance of the evidence"

standard.  Alternatively, Congress meant to impose the heightened standard of proof that

applies to limitations on a petitioner's ability to obtain approval of an immediate relative

petition – the "clear and convincing evidence" standard. *See, e.g.*, 8 U.S.C. §§ 1154(g),

1255(e)(3); 8 C.F.R. §§ 204.2(a)(1)(iii), 245.1(c)(8)(iii)(F).

55. The agency's application of a "beyond any reasonable doubt" standard is also contrary to Congressional intent.  In requiring a showing of "no risk" to the I-130 petition beneficiary, Congress did not state that all I-130 petitions filed by individuals convicted of a specified offense against a minor should be denied.  However, this is the inevitable result of USCIS's application of the "beyond any reasonable doubt" standard.  This heightened standard is, in practice, impossible for a petitioner to meet because he or she cannot prove a negative – that there is "no risk" beyond any reasonable doubt – particularly when the inquiry is triggered by a prior conviction.  Moreover, a psychologist or psychiatrist assessing a prior offender's risk of recidivism may find very low or even virtually no risk that the individual will reoffend, but is unlikely to conclude that there is no risk beyond any reasonable doubt.[1]

56. The "beyond any reasonable doubt" standard is nowhere present in administrative immigration proceedings because it is, primarily, a criminal law evidentiary standard.  It is impermissible for USCIS to apply this heightened legal standard to civil adjudications.  *See Tyler v. Cain*, 553 U.S. 656 (2001); *Addington v. Texas*, 441 U.S. 418 (1979); *Kirby v. United States*, 174 U.S. 47, 55 (1899).  Although civil proceedings, which may result in the "drastic impairment of the liberty and reputation of an individual," can be governed by the "beyond a reasonable doubt" standard, the burden in these cases is placed on the "accuser," and not the "accused." *See In re Winship*, 397 U.S. 358, 364, 369-72 (1970); 9 WIGMORE EVIDENCE § 2498 (Chadbourn rev. 1981).  However, USCIS is imposing this standard on the accused, requiring a U.S. citizen petitioner to meet a practically unattainable standard of proof – that it is "beyond any reasonable doubt" that he poses no risk to his beneficiary

---

[1] Plaintiffs' counsel is unaware of any cases in which USCIS has approved an I-130 petition filed by a petitioner convicted of a specified offense against a minor, based on the agency's determination that the petitioner successfully demonstrated beyond any reasonable doubt that he or she poses no risk to the intended beneficiary.

spouse. This requirement is inappropriate in a civil immigration proceeding. Consequently, the agency has exceeded its statutory authority in applying the "beyond any reasonable doubt" standard to the adjudication of I-130 petitions subject to the Adam Walsh Act.

57. Third, if USCIS intended to introduce the "beyond a reasonable doubt" standard to I-130 Petitions subject to the Adam Walsh Act, it should have done so by publicizing the rule and holding a notice and comment period, as required by the APA. *See* 5 U.S.C. §§ 706(2)(C)-(D). Instead, it imposed a criminal evidentiary standard, not specified by Congress, not found in the INA, and not present anywhere else in administrative immigration proceedings, via two policy memorandums. This is not only unlawful, but it creates "rules" that are subject to frequent change, leading to inconsistent and contradictory adjudication patterns. Without lawfully created regulations and rules to alleviate any ambiguity in the INA, USCIS must interpret the Adam Walsh Act in a way that is both least likely to violate the rights of the U.S. citizen petitioner and most favorable to the alien beneficiary. *See INS v. St. Cyr.*, 533 U.S. 289, 299-300 (2001); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948). For the above reasons, USCIS's application of the INA's Adam Walsh Act amendments to the Plaintiffs' I-130 Petition exceeds the agency's statutory authority and is *ultra vires* to the statute.

### E. USCIS's Denial of the Plaintiffs' I-130 Petition under the Adam Walsh Act Violates Mr. Struniak's Constitutionally Protected Liberty Interest in Marriage and Family Life

58. The fourth ground of relief is premised on USCIS's unwarranted interference with the Plaintiffs' protected liberty interest in marriage. Although Congress has broad plenary power to regulate noncitizens and their immigration to the United States, such plenary power cannot be extended to regulate *U.S. citizens* in a way that infringes upon their fundamental rights.

*See Mathews v. Diaz*, 426 U.S. 67, 78-80 (1976) (recognizing that in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens).  Here, the Adam Walsh Act amendments to the INA go beyond the plenary powers afforded to regulate noncitizens, as they impose restrictions and limits on United States citizens.  Arbitrarily depriving Mr. Struniak of the right to petition for his spouse interferes with his fundamental rights and is a violation of due process.

59. The Supreme Court has declared that the right to marry is a basic right, vital to humanity's very existence and survival and is part of the fundamental right to privacy.  *See Zablocki*, 434 U.S. at 388; *Loving*, 388 U.S. at 12.  USCIS's application of the Adam Walsh Act to the Plaintiffs' I-130 Petition infringes on Mr. Struniak's constitutional right to marry and on the married couple's pursuit of happiness, because it intrudes upon the recognized liberty interest to make personal choices with regard to marriage and family matters free from unjustifiable government interference.  When legislation burdens a group's exercise of a fundamental right in violation of substantive due process, a heightened level of review applies.  *Zablocki*, 434 U.S. at 388.  Accordingly, regulation of the Plaintiffs' choices related to their marriage must survive this heightened scrutiny, whereby the government must demonstrate that the law as applied is narrowly tailored to achieve a compelling governmental interest.  *See Washington v. Glucksberg*, 521 U.S. 702, 726 (1997) (declaring "personal decisions relating to marriage" among "certain fundamental rights" subject to substantive due process review); *see also Plyler v. Doe*, 457 U.S. 202 (1982).  Application of the Adam Walsh Act to adult, married couples who have no children fails to satisfy a compelling interest sufficient to overcome the unconstitutional interference with their due process rights.

60. Even though the Adam Walsh Act does not prevent marriage itself, its application to the
    Plaintiffs is a violation of due process because its effect is to prevent them from living
    together in marital union in the United States. In an analogous case, the Supreme Court
    invalidated a sterilization law because it infringed on a fundamental right to marriage and
    procreation of some criminals, but not others. *See Skinner v. Okla. Ex rel. Williamson*, 316
    U.S. 535 (1942). More to the point, the Ninth Circuit has recognized a U.S. citizen
    petitioner's due process challenge to the denial of her spouse's immigrant visa, based on her
    protected liberty interest in "[f]reedom of personal choice in matters of marriage and family
    life." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). The Plaintiffs are
    lawfully married and have affirmatively chosen to build a life together. USCIS's application
    of the Adam Walsh Act to deny their I-130 Petition will have the effect of compelling Ms.
    Minigalina to leave the United States, resulting in the Plaintiffs' certain separation. *See*
    United Nations High Commissioner for Refugees, *Russia: Requirements and procedures to
    obtain a temporary residence permit, a permanent residence permit, and citizenship through
    marriage* (Nov. 7, 2011) (noting that an applicant must provide a police certificate as
    evidence of any criminal record as part of the application process for permanent residence).
    It cannot have been Congress's intent in enacting the Adam Walsh Act to permit Mr.
    Struniak to have a married life with a U.S. citizen but not with a noncitizen.

61. The Plaintiffs concede that the law of this Circuit is not in their favor. More than 50 years
    ago, in *Swartz v. Rogers*, 254 F.2d 338 (D.C. Cir. 1958), the D.C. Circuit rejected the
    argument that deportation of a noncitizen husband would violate the due process rights of his
    U.S. citizen wife owing to the interference with her right to marry and establish a home and
    family in the United States. *Id.* at 339. The Court explained:

> Certainly deportation would put burdens upon the marriage. It would impose upon the wife the choice of living abroad with her husband or living in this country without him. But deportation would not in any way destroy the legal union which the marriage created. The physical conditions of the marriage may change, but the marriage continues.

*Id.* And this Court has extended *Swartz* beyond deportation to the immigrant visa context, holding that "denial of the applicant's visa application does not infringe upon the applicant's wife's marital relationship with her husband because the defendants have 'done nothing more than to say that that the residence of one of the marriage partners may not be in the United States.'" *Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 105-06 (D.D.C. 2011) (quoting *Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970)).   At least one court outside this circuit has reached the opposite conclusion, finding that denial of an immigrant visa *can* implicate a U.S. citizen petitioner's constitutionally protected liberty interest in her marriage and thus give rise to a due process claim. *See, e.g., Din v. Kerry*, 718 F.3d 856, 868 (9th Cir. 2013) ("Din has a constitutionally protected due process right to limited judicial review of her husband's visa denial, which stems from her '[f]reedom of personal choice in matters of marriage and family life.'"), *cert. granted, Kerry v. Din*, 2014 U.S. LEXIS 4911 (Oct. 2, 2014) (No. 13-1402); *Bustamante*, 531 F.3d at 1062.

62. The cursory analysis provided in *Swartz* and its progeny should be reexamined, because that analysis fails to distinguish between two separate issues.  The first is whether the Due Process Clause affords some protection to a U.S. citizen's choice of whether and where to live with his spouse.  The second is whether that protection – if it exists – is robust enough to outweigh a competing government interest (represented by the Adam Walsh Act amendments to the INA) that restricts the liberty.  The distinction is significant and merits closer scrutiny.  Whereas it cannot reasonably be disputed that the right to marry is of

34

fundamental importance, whether the government may validly restrict or interfere with that

liberty is a separate question. *See Zablocki*, 434 U.S. at 384-87. For example, the Supreme

Court has recognized that a state may legitimately prohibit marriages between siblings or

polygamous marriages. *Id.* at 392 (Stewart, J., concurring in the judgment). But such valid

restrictions do not "extinguish[] altogether" the liberty interest at stake. *Kleindienst v.*

*Mandel*, 408 U.S. 753, 765 (1972).

63. The Plaintiffs assert that Mr. Struniak has a constitutionally protected liberty interest in

choosing where to live with his spouse and that the Adam Walsh Act amendments

unreasonably restrict that right, because they prevent Mr. Struniak and Ms. Minigalina from

living together in the United States. *Swartz*'s conclusion that a forced separation of husband

and wife "would not in any way destroy the legal union which the marriage created," 254

F.3d at 339, is undermined by the Supreme Court's recent pronouncement that "marriage is

more than a routine classification for purposes of certain statutory benefits" but is, instead, an

"intimate relationship between two people." *United States v. Windsor*, 133 S. Ct. 2675, 2693

(2013). As such, the marital relationship necessarily involves the choices of whether and

where to live together, as confirmed by nearly a century of Supreme Court jurisprudence.

*See, e.g., Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (finding "[w]ithout doubt" that the

liberty protected by the Constitution includes the freedom "to marry, establish a home, and

bring up children"); *see also Griswold*, 381 U.S. at 484-86; *Moore*, 431 U.S. at 499-503.

Whether and to what degree the government can legitimately regulate the marital relationship

is a separate question; that a given restraint on marriage may be permissible does not

eliminate the constitutionally protected liberty interest of a married couple to, among other

decisions, "establish a home" in the United States. *Meyer*, 262 U.S. at 399. It is this interest

that underlies the Plaintiffs' due process claim, and the government's interference with that liberty interest – via the Adam Walsh Act amendments to the INA – merits appropriate scrutiny by this Court.

## VII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A. Declare unlawful and set aside Defendant USCIS' decision to deny the Plaintiffs' I-130 Petition;

B. Remand to USCIS for findings in accordance with this decision under 5 U.S.C. § 702 and approval of the Plaintiffs' I-130 Petition;

C. Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act ("EAJA");

D. Grant such other and further relief as this Court deems proper.

Respectfully submitted this 9th day of June, 2015,


_/s/  Dree K. Collopy_____
Dree K. Collopy
D.C. Bar No. 985545
BENACH RAGLAND LLP
1333 H Street, NW
Suite 900 West
Washington, DC  20005
Tel: (202) 644-8600
Fax: (202) 644-8615
dcollopy@benachragland.com

_Counsel for the Plaintiffs_