UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
FRANK SCOTT STRUNIAK and                )
AYGUL MINIGALINA,                                 )
                                                              )
              Plaintiffs,                                    )
                                                              )
v.                                                               )          Civ. No.   1:15-cv-00852-RMC
                                                              )
LORETTA LYNCH, Attorney General       )
U.S. Department of Justice, in her official capacity,  )
*et al.*,                                                          )
                                                              )
              Defendants.                                 )
_____)

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT

Plaintiffs respectfully submit this Memorandum of Points and Authorities in Opposition to Defendants' Motion to Transfer Venue or, in the Alternative, to Dismiss the Complaint.

## I.    INTRODUCTION

This action was properly brought before the United States District Court for the District of Columbia. Defendants' motion to transfer venue fails to meet its heavy burden of demonstrating that the balance of convenience and justice weighs in favor of transfer. A majority of the Defendants reside in the District of Columbia and a substantial part of the events giving rise to Plaintiffs' claims arose here. Moreover, this case involves questions of federal immigration law – not localized matters – and will be decided on the administrative record alone.  For these and the further reasons detailed below, transfer to the Eastern District of Virginia is unwarranted.

Defendants' motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure should be denied. This Court has subject matter jurisdiction over all of the causes of action

identified in the complaint. First, Defendants' "no risk" determination was not the product of an exercise of discretion and is not therefore a discretionary determination shielded from review under 8 U.S.C. § 1252(a)(2)(B)(ii). Second, Defendants' 12(b)(1) motion concerning Plaintiffs' claim that the agency improperly adopted a "beyond any reasonable doubt" standard to no risk determinations is foreclosed by the plain language of the Adam Walsh Act and by *McNary v. Haitian Refugee Center, Inc.*, where, in an analogous context, the Supreme Court permitted challenges to agency policies and procedures.

Defendants' Rule 12(b)(6) motion also fails. First, Defendants' arguments that the agency was authorized to impose a "beyond any reasonable doubt" standard for the statute's "no risk" determination are unpersuasive. As a threshold matter, Defendants are owed no *Chevron* deference because the standard emanates from an agency policy memorandum not promulgated following notice and comment rulemaking. Furthermore, Defendants' arguments lack the power to persuade because they presume that Congress, *sub silentio*, imported into civil proceedings a totally foreign evidentiary standard, thereby altering the fundamental details of a regulatory scheme without clearly indicating it was doing so. Defendants have not identified a single instance in which a court has prescribed, as a matter of statutory interpretation, a "beyond any reasonable doubt" standard in civil proceedings.

Second, Defendants' argument that the agency acted within its delegated authority by applying the Adam Walsh Act amendments to the Immigration and Nationality Act ("INA") to the childless Plaintiffs is mistaken because it relies on an incorrect reading of the underlying purpose of the Adam Walsh Act.

Third, Defendants' motion to dismiss Plaintiffs' retroactivity claim fails because Defendants' arguments are at odds with controlling case law and rely on readily distinguishable

cases. Moreover, agencies' interpretations of the retroactive reach of statutes are owed no deference.

Finally, Defendants' argument that U.S. citizens lack a constitutionally protected liberty interest in choosing where to live with their spouses is undermined by a recent landmark decision of the Supreme Court.

For the reasons that follow, the Court should deny Defendants' motion to transfer venue or, in the alternative, motion to dismiss.

## II.   TRANSFER OF THIS ACTION TO THE EASTERN DISTRICT OF VIRGINIA IS NOT WARRANTED

Defendants' motion to transfer venue should be denied because they have failed to carry their heavy burden of showing that the balance of convenience and justice substantially favors transfer.

### a.   Law governing venue transfer motions generally

This Court has made clear that in evaluating a motion to transfer, the plaintiff's choice of forum is entitled to "great deference" and is a "paramount consideration[.]" *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002); *see also Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2005) ("Courts give considerable deference to the plaintiff's choice of forum."). As the moving party, Defendants bear the "heavy burden" of demonstrating that a transfer of this case to the Eastern District of Virginia is warranted. *See Pain v. United Technologies Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980); *Shenandoah Assoc. Ltd. Partnership v. Tirana*, 182 F. Supp. 2d 14, 25 (D.D.C. 2001); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Defendants must establish that considerations of convenience and the interest of justice weigh in favor of a transfer. *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86. The Court must consider a number of case-specific private interest

and public interest factors. *Abusadeh v. Chertoff*, No. 06-2014, 2007 U.S. Dist. LEXIS 52549, at

*10-12 (D.D.C. 2007). The private interest factors include (1) Plaintiffs' choice of forum; (2)

Defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the

parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Sierra*

*Club v. Flowers*, 275 F. Supp. 2d 62, 65 (D.D.C. 2003). The Court also evaluates the following

public interest considerations: (1) the degree to which the courts in both venues are familiar with

governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts;

and (3) the local interest in deciding local controversies at home. *Abusadeh*, No. 06-2014, 2007

U.S. Dist. LEXIS at *12. When properly balanced, these factors weigh in favor of keeping this

matter within the District of Columbia.

> **b. Defendants have failed to carry their burden of establishing that the balance of private interests substantially weighs in favor of transfer.**

Defendants have failed to carry their "heavy burden" of demonstrating that a transfer to the

Eastern District of Virginia is proper. *See Pain*, 637 F.2d at 784. When the relevant private

interests are balanced, it becomes evident that convenience and the interests of justice militate

against Defendants' transfer motion.

Defendants first argue that Plaintiffs' choice of forum is improper based on a misleading

assertion that the Defendants do not reside in this district. Dkt 4 at 10. To the contrary, a *majority*

of the defendants are domiciled in the District of Columbia. Three of the five defendants — Leon

Rodriguez, Director of U.S. Citizenship and Immigration Services ("USCIS"); Jeh Charles

Johnson, Secretary of the Department of Homeland Security ("DHS"); and Loretta Lynch, the

Attorney General of the United States — reside in the district, a fact that Defendants do not

dispute. On this basis alone, Plaintiffs' choice of forum is proper. *See* 28 U.S.C. § 1391(e)(1)(a).

Second, Defendants argue that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Virginia. Dkt 4 at 11. This, too, is an overstatement. The USCIS policy underlying the adverse decision being challenged — denial of the Plaintiffs' marriage-based I-130 visa petition under the Adam Walsh Act — was issued by a senior official at USCIS headquarters, which is located at 20 Massachusetts Avenue, Washington, DC 20001. *See* Michael Aytes, Assoc. Dir., Domestic Operations, *Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé under the Adam Walsh Child Protection and Safety Act of 2006* (Feb. 8, 2007) (herein after "Aytes Memo"). Notably, the I-130 denial notice received by Plaintiffs is unmistakably similar to the template denial form that was developed and disseminated by USCIS headquarters. *See* Donald Neufeld, Acting Assoc. Dir., Domestic Operations, *Transmittal of SOP for Adjudication of Family-Based Petitions under the Adam Walsh Child Protection and Safety Act of 2006* at 19-25 (Sept. 24, 2008) (hereinafter "Neufeld Memo"). Although the Washington District Office of USCIS in Fairfax, Virginia may actually have issued the denial decision, this case — like all Adam Walsh Act cases — was substantially decided at USCIS headquarters. *Cf. The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 13-15 (D.D.C. 2000) (denying transfer away from District of Columbia where evidence established federal government official's "heavy involvement" in decision-making process).

Moreover, as Defendants recognize, the office that adjudicated Plaintiffs' I-130 petition is called the "Washington Field Office." Dkt 4 at 5-6. The Washington Field Office has jurisdiction over applications filed by residents of Virginia *and* Washington, D.C., as there is no field office of USCIS physically located in the District of Columbia. *See* USCIS Washington D.C. Field Office Webpage, http://www.uscis.gov/about-us/find-uscis-office/field-offices/washington-dc-washington-field-office (last visited Aug. 31, 2015). Defendants' argument concerning the

physical location of the Board of Immigration Appeals ("Board" or "BIA") likewise is a red herring. Dkt 4 at 11. The Board is part of the Executive Office for Immigration Review, which in turn is a division of the U.S. Department of Justice headquartered in Washington, D.C., 8 C.F.R. § 1003.1(a)(1), and is tasked with setting nationwide immigration policy. 8 C.F.R. § 1003.1(d); *see also* Board of Immigration Appeals Homepage, *available at* http://www.justice.gov/eoir/board-of-immigration-appeals (noting that the "BIA has been given *nationwide* jurisdiction to hear appeals from certain decisions rendered by immigration judges and by district directors of the [DHS] in a wide variety of proceedings") (emphasis added) (last visited Aug. 31, 2015). The BIA does not decide localized disputes, but "is the highest administrative body for interpreting and applying immigration laws[,]" *id.*, with jurisdiction over appeals from 59 Immigration Courts, EOIR Immigration Court Listings, *available at* http://www.justice.gov/eoir/eoir-immigration-court-listing (last visited Aug. 31, 2015), five USCIS Service Centers, USCIS Service and Office Locator, *available at* https://egov.uscis.gov/crisgwi/go?action=offices.type&OfficeLocator.office_type=SC  (last visited Aug. 31, 2015), and 26 USCIS District Offices, each with their own field offices, located throughout the United States. *See* 8 C.F.R. 1003.1(b) (setting forth BIA's appellate jurisdiction); *see also* USCIS Field Office District Information, AILA InfoNet Doc. No. 13110744. (Posted 11/7/13). It is of no consequence to the Board's administrative appellate responsibilities that its offices are physically located in Falls Church, Virginia.

In addition, the background check process that USCIS performed in the process of adjudicating Plaintiffs' petition was conducted at the Washington Field Office of the Federal Bureau of Investigation ("FBI"), another component of the Department of Justice. Contrary to

Defendants' claims, this action lacks meaningful ties to the Eastern District of Virginia and a

substantial portion of events giving rise to this cause of action arose in this district.

Finally, this case turns on the interpretation of federal laws. Therefore, this Court's review

of the agency's decision "is likely to [be] determine[d] on the papers," *Sierra Club v. Flowers*, 275

F. Supp. 2d. at 69, and thus the consideration of convenience of the parties carries no weight.

Likewise, the convenience of any witnesses "is not a significant factor." *Id*. Moreover, ease of

access to sources of proof is of little significance where, as here, the Court will likely decide this

case on the administrative record alone. *See Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.

Supp. 525, 527 (D.D.C. 1987). Accordingly, the private interests weigh in favor of keeping this

matter in the District of Columbia.

    **c.  Defendants have failed to establish that the public interest militates in favor of transfer.**

The public interest factors also counsel against a transfer.  First, this case involves the

interpretation of federal statutes and regulations.  In the cases where this Court has found transfer

to be warranted, the suits involved a localized dispute with little national significance and the

alternative venue was more familiar with governing laws. *See, e.g., Southern Utah Wilderness

Alliance*, 315 F. Supp. 2d at 88-89; *Sierra Club*, 276 F. Supp. 2d at 71. Defendants identify no

localized interest that militates in favor of transfer. Dkt 4 at 12. Indeed, this matter does not turn on

issues of state or local law and, instead, concerns an issue of national significance — whether

USCIS has permissibly construed the amendments to the INA wrought by the Adam Walsh Act.

Second, Defendants assert that the relative congestion between this Court's docket and the

Eastern District of Virginia's is "neutral," but the facts they cite belie that proposition. Dkt 4 at 13.

In the year ending March 31, 2015, this Court had roughly *half* the number of new filings as the

Eastern District of Virginia. *Id*. This Court has fifteen judges, compared to the Eastern District of

Virginia's eleven. *Id.* Thus, with fewer judges and double the number of new filings, the Eastern District of Virginia's docket is considerably more congested than this Court's. It is congestion — not adjudication speed — that courts should consider in weighing where the public interest lies for purposes of motions to transfer. *Abusadeh v. Chertoff*, No. 06-2014, 2007 U.S. Dist. LEXIS 52549, at *10-12 (D.D.C. 2007)

Third, although Defendants declare that the Eastern District of Virginia "has a prevailing interest in deciding what is essentially a local, albeit federal, matter[,]" dkt 4 at 13, they fail to identify any compelling local interest that favors a transfer. Because this case involves the interpretation of federal immigration laws, on a paper administrative record, it is not a matter in which local interest or local impact tips the public-interest balance in favor of a transfer. *See Greater Yellowstone*, 180 F. Supp. 2d at 129-30; *cf. Shawnee Tribe*, 298 F. Supp. 2d at 27 (finding a compelling "local interest" favoring transfer where resolving the controversy at issue "would require not only knowledge and experience in interpreting Native American Indian treaties, but examination of local property records and deeds and other documents").

Finally, and perhaps most significantly, a grant of Defendants' motion to transfer would unavoidably lead to further, unnecessary delay. Plaintiffs filed their I-130 petition in April 2007. Dkt 1 at ¶ 26. The agency denied the petition on May 15, 2012. *Id.* at 16. The BIA affirmed the agency's denial in November 2014. *Id.* Plaintiffs have now been waiting over eight years to move forward with an I-130 petition that is a necessary prerequisite to Ms. Minigalina obtaining lawful permanent resident status. The prospect of such additional delay weighs heavily against a grant of Defendants' transfer request. *Cf. Trout Unlimited*, 944 F. Supp. 13 at 19 (granting government's transfer request where "[i]t is not evident that a transfer to the northern district of Colorado will

lead to unnecessary delay"). Thus, the public interest factors, properly weighed, do not support a transfer.

    In sum, Defendants have failed to carry their heavy burden of demonstrating that a transfer to the Eastern District of Virginia would serve the interests of justice or the convenience of the parties in this case. Plaintiffs therefore urge this Court to deny Defendants' motion to transfer and proceed with consideration of the merits of their claims.

## III.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER ALL CAUSES OF ACTION IN THE COMPLAINT

### a.   The standard of review under Federal Rule of Civil Procedure 12(b)(1).

    When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is a constitutional and statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### b.   8 U.S.C. § 1252(a)(2)(B)(ii) does not divest this Court of jurisdiction over the agency's no risk determination in this case because that determination did not involve the exercise of any discretion at all.

    Defendants correctly state that 8 U.S.C. § 1252(a)(2) precludes district courts from exercising subject matter jurisdiction to review claims arising from purely discretionary denials of immigration benefits. Dkt 4 at 17. They further state – and Plaintiffs do not dispute – that

9

discretionary no risk determinations under the Adam Walsh Act are specified to be within the agency's discretion. Dkt 4 at 17. Defendants err, however, in characterizing the agency's no risk determination in Plaintiffs' case as an exercise of discretion. Dkt 4 at 19. For the reasons that follow, the agency's no risk finding did not involve the exercise of any discretion at all and, as a consequence, 8 U.S.C. §1252(a)(2)(B)(ii) does not bar review over that finding.

It is axiomatic that 8 U.S.C. § 1252(a)(2)(B)(ii)'s bar to review of agency denials of discretionary relief applies only if the agency has actually exercised discretion. Discretion, in the administrative law context, refers to a "public official's or agency's power to exercise judgment in the discharge of its duties." *Black's Law Dictionary* 499 (8th ed. 2004). Put another way, "[d]iscretion comes into play when the [agency] has to balance the factors that weigh in favor of [a result] against those … that weigh against it." *Munoz-Pacheco v. Holder*, 673 F.3d 741, 745 (7th Cir. 2012); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) ("Discretion" means the power to act "according to [one's] own understanding and conscience"). It follows that a "[f]ailure to exercise discretion is not exercising discretion; it is making a legal mistake." *Munoz-Pacheco*, 673 F.3d at 745, *citing Patel v. Holder,* 563 F.3d 565, 568-69 (7th Cir.2009); *Adebowale v. Mukasey,* 546 F.3d 893, 896 (7th Cir. 2008); *accord Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003) ("The BIA has no discretion to make a decision that is contrary to law.").

The agency's no risk determination in Plaintiffs' case was not the result of an exercise of discretion. Dkt 4-1 at 5. USCIS denied Plaintiffs' I-130 petition because Plaintiffs did not submit a document the agency *claims* it required Plaintiffs to produce to make its risk assessment – the trial

transcript from Mr. Struniak's 1993 criminal case.[1] Dkt 4-1 at 5. The agency's May 15, 2012 decision makes clear that, because the record lacked Plaintiff Struniak's 1993 transcript, USCIS could not even *decide* whether Struniak poses a risk to his spouse: "It is USCIS's belief that without those trial transcripts, it would be difficult to conclude, without reasonable doubt, that you do not pose a risk to your spouse. The transcripts *would have enabled USCIS to decide* whether your contention of subsequent good moral character, despite the convictions, are [*sic*.] legitimate and *would have eventually led to an assessment* of no risk." Dkt 4-1 at 5 (emphasis added). The use of the conditional — "would have enabled" and "would have eventually led to an assessment" — make clear that the agency stopped short of exercising discretion. *Id*. It did not "balance the factors that weigh in favor of [a no risk determination] against those … that weigh against it." *Munoz-Pacheco*, 673 F.3d at 745. The agency simply denied Plaintiffs' I-130 because the Plaintiffs did not submit a trial transcript – a document Plaintiff was not even asked to produce in connection with the agency's no risk determination. By denying the I-130 based solely on Plaintiffs' failure to submit the trial transcript, the agency overlooked all of the relevant evidence Plaintiffs had provided. There was no balancing of the evidence, no assessment, and the Defendants did not exercise discretion at all. Dkt 1 at ¶ 30.

The core *discretionary* no risk determination USCIS is charged with making is, as Defendants correctly point out, "based on the 'present danger' the petitioner poses to his intended

---

[1] In fact, USCIS did not require Plaintiffs to provide trial transcripts in connection with the no risk determination. USCIS's Request for Evidence and Notice of Intent to Deny, dated March 15, 2011, requested that Plaintiff Struniak provide trial transcripts (and certain other documents) "to demonstrate that [he was] not convicted of…a 'specified offense against a minor.'" Dkt 4-6 at 4. Whether or not his conviction qualifies as a "specified offense against a minor" has never been in dispute. Importantly, USCIS did not require — or even request — that Mr. Struniak provide trial transcripts to establish that he posed no risk to the beneficiary. *Id*. To establish that he posed no risk, Plaintiff Struniak was requested to provide counseling records, certified psychological evaluations, and evidence demonstrating service to the community. *Id*. Plaintiff timely provided these and many other relevant materials. Dkt 1 at ¶ 26-30.

beneficiary. The fact of a prior conviction is only one factor to be considered in making that

determination …." Dkt 4 at 28. Here, USCIS did not even consider whether Plaintiff Struniak

poses a "present danger" to Plaintiff Minigalina. According to the decision at issue in this case,

USCIS "would have" made a no risk assessment had Plaintiff provided the trial transcript — but

here, no such assessment was made. Dkt 4-1 at 5. Rather, on the core discretionary question, the

agency did not "balance … factors[,]" *Munoz-Pacheco*, 673 F.3d at 745, or "exercise

judgment[,]"*Black's Law Dictionary* 499 (8th ed. 2004) — it decided the petition on a specious

technicality.

Because the agency's "failure to exercise discretion is not exercising discretion," *Munoz-*

*Pacheco*, 673 F.3d at 745, Defendants may not invoke 8 U.S.C. § 1252(a)(2)(B)(ii) to shield their

decision from review.  Put differently, 8 U.S.C. § 1252(a)(2)(B)(ii) does not apply here because

the agency's decision to deny the Plaintiffs' petition involved no assessment, no balancing, and no

exercise of discretion at all. This Court has jurisdiction to review nondiscretionary decisions

regarding visa petitions under the Administrative Procedure Act ("APA"), which requires a

reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *IQ Sys., Inc. v. Mayorkas*, 667 F.

Supp. 2d 105, 109 (D.D.C. 2009); *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005)

("[Section] 1252(a)(2)(B) does not bar judicial review of nondiscretionary, or purely legal,

decisions …."). An agency does not have the discretion to entirely ignore evidence submitted.

Because USCIS ignored substantial evidence without a rational basis in adjudicating Plaintiffs' I-

130 Petition, its denial was arbitrary and capricious and should therefore be set aside as

fundamentally flawed. Dkt 1 at ¶ 38-43.

Defendants' 12(b)(1) argument also merits rejection because it rests on a strikingly expansive reading of 8 U.S.C. § 1252(a)(2)(B)(ii). The breadth of Defendants' interpretation of the jurisdiction-restricting provision is cast in stark relief when they assert that "[b]ecause th[is] Court lacks the subject matter jurisdiction to consider the result in this case, the Court lacks jurisdiction to review the process." Dkt 4 at 19. Taken to its logical conclusion, Defendants' position means that judicial review would be unavailable even where agency officials flagrantly violate the Constitution by, for example, refusing to accept relevant evidence or openly declaring bias against — and refusing to approve petitions filed by — individuals previously convicted of an Adam Walsh Act predicate offense. Defendants' reading of 8 U.S.C. § 1252(a)(2)(B)(ii) raises serious constitutional concerns and should therefore be rejected. *INS v. St. Cyr*, 553 U.S. 289, 299-300 (reciting canon of statutory construction according to which courts are obligated to construe statutes to avoid constitutional problems and rejecting government's interpretation of statute that would "entirely preclude review of a pure question of law by any court" because it would "give rise to substantial constitutional questions[.]") (internal citations omitted).

For the foregoing reasons, this Court is not barred under 8 U.S.C. § 1252(a)(2)(B)(ii) from exercising jurisdiction over the agency's non-discretionary no risk determination. Defendants' Rule 12(b)(1) motion should be denied.

  **c. The plain language of the Adam Walsh Act and binding Supreme Court precedent permit this Court to review the agency's adoption of the "beyond any reasonable doubt" standard.**

Defendants next argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes this Court from reviewing not only discretionary no risk determinations issued in individual cases, but also statutory and constitutional challenges to the agency's implementation of the Adam Walsh Act, including Plaintiffs' challenge to USCIS's adoption of the "beyond any reasonable doubt" standard

for no risk determinations. Dkt 4 at 20-22. However, Defendants' argument, which rests entirely on non-binding case law, is foreclosed by the plain language of the Adam Walsh Act and by *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991).

In *McNary*, the Court held that judicial review was available to hear claims of unlawful practices and policies adopted by the Immigration and Naturalization Service ("INS") in its administration of the Special Agricultural Worker ("SAW") program of the Immigration Reform and Control Act of 1986, Pub. L. 99-603, 100 Stat. 3359, notwithstanding a jurisdiction-restricting provision like 8 U.S.C. § 1252(a)(2)(B)(ii). 498 U.S. 479. The jurisdiction-restricting provisions at issue in *McNary* were 8 U.S.C. § 1160(e)(1), which provides "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this section[,]" and 8 U.S.C. § 1160(e)(3)(A), which provides "[t]here shall be judicial review of [administrative] denial[s] only in the judicial review of an order of exclusion or deportation under [a separate provision.]" Read together, these provisions barred judicial review of individual SAW denials except in deportation proceedings, and the question before the Court was whether these provisions also foreclosed the plaintiffs' general challenge to certain INS practices. *McNary*, 498 U.S. at 491.

The *McNary* Court concluded that judicial review was available to hear systemic challenges like plaintiffs' for several reasons. First, the jurisdiction-restricting provisions referred to "a determination" and review of "such a denial," which refer to "a single act rather than a group of decisions or a practice or procedure employed in making decisions." *Id*. at 492. Second, had Congress intended to preclude "challenges to INS procedures and practices, it could easily have used broader statutory language." *Id*. at 494. Third, interpreting the statute as the government desired would have foreclosed meaningful judicial review of statutory and constitutional claims,

which would be inconsistent with the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." *Id.* at 496.

      *McNary* counsels in favor of reviewing the agency's adoption of the "beyond any reasonable doubt" standard and rejecting Defendants' 12(b)(1) motion. Here, as in *McNary*, the plain meaning of the relevant statutory provision allows for challenges to USCIS policies and procedures. The relevant Adam Walsh Act provision provides that the clause entitling certain family members of U.S. citizens to immediate relative status — clause (i) —

> shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that *the citizen* poses no risk to *the alien with respect to whom a petition described in clause (i) is filed.*

8 U.S.C. § 1154(a)(1)(A)(viii) (emphasis added).  Congress's use of the definite article — "the citizen" and "the alien" — makes clear that the decision specified to be within the Secretary of Homeland Security's discretion is the determination of whether a *particular* citizen poses a risk to a *particular* beneficiary with respect to whom a *particular* I-130 has been filed. *Cf. American Bus. Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'") (internal citations omitted). It is that individualized discretionary decision — and only that decision — that Congress has vested in the Secretary's unreviewable discretion. Defendants' favored interpretation of 8 U.S.C. § 1154(a)(1)(A)(viii) — according to which the *framework* USCIS adopts for making individualized discretionary no risk determinations is also immune from review — asks this Court to give the statutory language a meaning the words simply cannot bear.

      Moreover, had Congress intended the Adam Walsh Act to carry Defendants' proposed meaning, Congress would have used broader language than it did. *Cf. McNary* 498 U.S. at 494. For

example, Congress could have specified that judicial review is precluded "on all questions of law and fact" arising under the Adam Walsh Act.

Finally, Defendants' proposed reading of the Adam Walsh Act, which would result in no judicial review whatsoever, must be considered against the backdrop of the "strong presumption that Congress intends judicial review of administrative action." *Traynor v. Turnage*, 485 U.S. 535, 542 (1988). The only other provision that could potentially vest jurisdiction with any court — 8 U.S.C. § 1252(a)(2)(D) — only applies to petitions for review of removal orders that are brought in the U.S. Circuit Courts of Appeals. *Green v. Napolitano*, 627 F.3d 1341, 1346 (10th Cir. 2010) (concluding that district court lacked jurisdiction to consider revocation of I-130 application in part because § 1252(a)(2)(D) allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal). Even the Board of Immigration Appeals has held that it is precluded from reviewing not just discretionary no risk determinations but also the legal aspects of those determinations. *Matter of Aceijas-Quiroz*, 26 I&N Dec. 294 (BIA 2014). Thus, assuming, *arguendo*, that the plain language of the Adam Walsh Act permits Defendants' interpretation, that interpretation should be rejected because it offends the "strong presumption that Congress intends judicial review of administrative action." *Traynor v. Turnage*, 485 U.S. 535, 542 (1988). In short, Defendants' argument that Congress vested USCIS with unreviewable *carte blanche* to determine how the Adam Walsh Act would be applied in all cases is not supported by the plain text of the statute and is inconsistent with well-established canons of statutory interpretation.

At least five district courts have considered whether they have subject matter jurisdiction to consider legal and constitutional challenges to USCIS's implementation of the Adam Walsh Act. *Burbank v. Johnson*, No. 2:14-CV-292, 2015 U.S. Dist. LEXIS 99936 (E.D. Wa. July 29, 2015)

(court has subject matter jurisdiction); *Bakran v. Johnson*, No. 15-127, 2015 U.S. Dist. LEXIS 75538 (E.D. Pa. June 11, 2015) (same); *Bittinger v. Johnson*, No. 1:14-cv-1560, 2015 U.S. Dist. LEXIS 80671 (M.D. Pa. June 22, 2015) (court lacks subject matter jurisdiction); *Bremer v. Johnson*, No. 13-1226-CV-W, 2014 U.S. Dist. LEXIS 174035 (W.D.Mo. Dec. 17, 2014) (same); *Beeman v. Napolitano*, No. 10-803, 2011 U.S. Dist. LEXIS 53512 (D.Or. May 17, 2011) (same). Of these, only two have considered the specific issue of whether *McNary* should control the outcome here, with *Burbank* ruling that *McNary* controls, 2015 U.S. Dist. LEXIS 99936 at *6-13, and *Bremer* ruling that *McNary* does not control. 2014 U.S. Dist. LEXIS 174035 at *7-11. The *Bremer* court distinguished *McNary* on the grounds that Congress's use of the phrase "any other decision or action" in 8 U.S.C. § 1252(a)(2)(B)(ii) amounted to "broad[]" jurisdiction-stripping statutory language that was absent in the SAW scheme. *Id*. The absence of similar language in the SAW statute was one reason the Court found it had jurisdiction to hear the *McNary* plaintiffs' legal and constitutional challenges. *McNary*, 498 U.S. at 494.

     *Bremer*'s analysis is flawed because the court focused on the wrong statutory provision to determine the scope of its jurisdiction. The issue before the court in *Bremer* was whether Congress had divested courts of jurisdiction to hear challenges to the legal framework USCIS adopted to implement the Adam Walsh Act. 2014 U.S. Dist. LEXIS 174035 at *7-11. To answer that question, the court should have turned — as the *Burbank* court did, 2015 U.S. Dist. LEXIS 99936 at *6-13 — to the provision in the Adam Walsh Act that specifies what decision or decisions Congress gave USCIS unreviewable discretion to make. That provision is 8 U.S.C. § 1154(a)(1)(A)(viii). And, as explained above, that provision makes clear that the only decision specified to be within the Secretary's discretion is the determination of whether a *particular* citizen poses a risk to a *particular* beneficiary with respect to whom a *particular* I-130 has been filed. 8

U.S.C. § 1252(a)(2)(B)(ii), which the *Bremer* court incorrectly focused on, 2014 U.S. Dist. LEXIS 174035 at *7-11, simply says that judicial review is precluded *when* a "decision or action" is *elsewhere* specified to be within the Secretary's discretion. But it is 8 U.S.C. § 1154(a)(1)(A)(viii) that identifies what "decision or action" falls within the Secretary's discretion in the first place. "Because *only* the no-risk determination was committed to the USCIS's unreviewable discretion," *Burbank*, 2015 U.S. Dist. LEXIS 99936 at *11 (emphasis added), this Court should decline to follow *Bremer* and find, instead, that *McNary* controls.[2]

For the foregoing reasons, Defendants' motion to dismiss under Rule 12(b)(1) should be denied. This Court is not barred from exercising jurisdiction over Plaintiffs' challenge to Defendants' application of the "beyond any reasonable doubt" standard.

## IV.   THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### a.   The standard of review governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (*quoting Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); *see also Jerome Stevens Pharms., Inc. v.*

---

[2] Defendants also rely on dicta from *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196 (3d Cir. 2006) to argue that this Court may not review USCIS's adoption of the "beyond any reasonable doubt" standard. Dkt 4 at 21. In *Jilin Pharmaceutical*, the Third Circuit concluded that visa revocation decisions under 8 U.S.C. § 1155 are discretionary and thus shielded from review. The court did not consider a challenge to the framework USCIS adopted for making visa revocation decisions. *McNary*, not *Jilin Pharmaceutical*, binds this Court. Finally, *Jilin Pharmaceutical* concerned an employment-based visa, while the interests at stake here relate to matters of marriage and family, which are of undeniably greater constitutional magnitude.

*FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), and the plaintiff must thus be given every favorable inference that may be drawn from the allegations of fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id*. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). If the plaintiff puts forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" the motion to dismiss should be denied. *Id*.

### b. Defendants exceeded their authority by imposing a "beyond any reasonable doubt" standard of proof to deny Plaintiffs' I-130 Petition.

#### i. *USCIS's adoption of the "beyond any reasonable doubt" standard merits no deference.*

Defendants maintain that the agency's adoption of the "beyond any reasonable doubt" standard is owed *Chevron* deference. Dkt 4 at 24-25. Defendants are mistaken. The "beyond any reasonable doubt" standard originated in a USCIS policy memorandum issued without notice and comment rulemaking, not a published BIA decision. *See* Aytes Memo at 5; *see also Aceijas-Quiroz*, 26 I&N Dec. at 297 ("[W]e lack jurisdiction to review the USCIS's determination regarding the appropriate standard of proof to be applied in the 'no risk' determination."). USCIS policy memoranda are not entitled to *Chevron* deference; rather, deference is assessed under *Skidmore*. *Landin-Molina v. Holder*, 580 F.3d 913, 919-20 (9th Cir. 2009); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of

which lack the force of law – do not warrant *Chevron*-style deference.") (internal citations omitted). As such, the policy memo is "entitled to respect" only to the extent that it has the "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). As explained below, Defendants' arguments in support of their application of the "beyond any reasonable doubt" standard are unpersuasive.

    ii.   *The agency's application of the "beyond any reasonable doubt" standard is impermissible.*

Defendants' arguments defending the agency's adoption of the "beyond any reasonable doubt" standard do not withstand scrutiny. Defendants state that Congress's use of the term "no risk" is a "directive regarding the high degree of confidence the agency must have in a petitioner's factual assertion that he poses no risk to the intended beneficiary." Dkt 4 at 24. But Defendants are conflating *the fact that must be established* with the *standard by which that fact must be established.*

In the immigration context, a heightened standard of review is generally applied by legislation, *see*, *e.g.*, 8 U.S.C. § 1229a(c)(2)(A) (providing that an applicant for admission must prove that he or she is "clearly and beyond doubt" entitled to be admitted), or by regulation promulgated after public notice and comment, *see*, *e.g.*, 8 C.F.R. § 1212.7(d) (providing that individuals with certain criminal convictions may be granted a section 212(h)(2) waiver of inadmissibility by "clearly demonstrat[ing]" that denial would result in the elevated level of "exceptional and extremely unusual" hardship).

Congress's silence on the burden of proof in the Adam Walsh Act strongly suggests it intended the default immigration evidentiary standards to apply. *Lorillard Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580 (1978) (Congress is presumed to be aware of the legal landscape in which it legislates, including case law). In visa petition proceedings, the ordinary standard of proof

is a preponderance of the evidence. *See Matter of Pazandeh*, 19 I&N Dec. 884, 887 (BIA 1989);

*Matter of Soo Hoo*, 11 I&N Dec. 151, 152 (BIA 1965); *see also Matter of Chawathe*, 25 I&N Dec.

369, 375 (AAO 2010) (stating that the preponderance of evidence standard applies except where a

different standard is specified by law).

Given the long history of applying, exclusively, civil law evidentiary burdens in the

immigration context, it is unreasonable to assume that Congress, *sub silentio*, directed USCIS to

adopt the "beyond any reasonable doubt" criminal law standard – a complete stranger to civil

proceedings.[3] In *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, the Court made

clear that the "beyond any reasonable doubt" standard is extraordinary outside of the criminal

context:

> [T]he Court has never required the 'beyond a reasonable doubt' standard to be
> applied in a civil case. This unique standard of proof, not prescribed or defined in
> the Constitution, is regarded as a critical part of the moral force of the criminal law,
> and we should hesitate to apply it too broadly or casually in noncriminal cases.

454 U.S. 90, 93 (1981) (internal quotations and citations omitted). Had Congress intended USCIS

to adopt a standard that is completely foreign to the immigration laws, then it would have offered a

much clearer "directive." Dkt 4 at 24. "Congress, we have held, does not alter the fundamental

details of a regulatory scheme in vague terms or ancillary provisions— it does not, one might say,

hide elephants in mouseholes." *Whitman v. American Trucking Assns., Inc.*, 531 US 457, 468

(2001).

---

[3] Defendants do not point to a single case in which a court has prescribed a "beyond any
reasonable doubt standard" for civil proceedings. USCIS's adoption of the standard appears to be
entirely without precedent.

A plain reading of the statute reveals no reason why the ordinary standard that applies in nearly all immigration benefits adjudications — the preponderance of the evidence standard or, at most, the clear and convincing evidence standard — would not apply to this civil immigration statute.[4]

The agency's decision to adopt the "beyond any reasonable doubt" standard does not follow Congressional breadcrumbs. Consider, for example, the fact that Congress selected a lower evidentiary standard than "beyond any reasonable doubt" for individuals seeking admission into the United States who are members of certain terrorist organizations but who deny knowing that the organization to which they belonged was a terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(i)(VI). Congress provided that such an individual shall not be inadmissible provided he or she "can demonstrate by clear and convincing evidence that [he or she] did not know, and should not reasonably have known, that the organization was a terrorist organization." *Id*; *see also* 8 U.S.C. § 1182(a)(3)(B)(iv)(V)(cc) (solicitors of funds or other things of value for certain terrorist organizations may be admissible if "the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization.").[5] It strains credulity to believe that Congress intended U.S. citizen

---

[4] It is difficult to reconcile the agency's decision to adopt the "beyond any reasonable doubt" standard for no risk determinations with their decision to adopt lesser standards in other contexts where public safety is arguably implicated. For example, where a lawful permanent resident (LPR) seeks cancellation of removal under 8 U.S.C. § 1229b(a), and the "evidence indicates" that he or she has been convicted of a crime that may rise to the level of an aggravated felony under 8 U.S.C. § 1101(a)(43), the LPR bears the burden of establishing *by a preponderance of the evidence* that he or she has not been convicted of an aggravated felony. 8 C.F.R. § 1240.8(d). That standard was promulgated by regulation and was not statutorily mandated. 62 Fed. Reg. 10,312, 10,322 (March 6, 1997) ("It is well-settled that an alien bears the burden of establishing eligibility for relief or a benefit. This provision merely reflects this well-settled rule. Also, an alien is only required to establish eligibility by a preponderance of the evidence."); 8 U.S.C. § 1229a (1997) (silence as to evidentiary standard for establishing eligibility for relief in removal proceedings).

[5] The statutory structure of these provisions is not unlike the Adam Walsh Act insofar as in both contexts, Congress has specified that certain past conduct makes a person presumptively ineligible for an immigration benefit, but has allowed ineligible individuals to demonstrate, at least in theory,

petitioners seeking visa classification for their foreign-born spouses to have to meet the highest evidentiary standard in Anglo-American law, while undisputed members of (or solicitors for) certain terrorist organizations must meet a lower standard of proof to establish that they did not know or should not reasonably have known that the organization they supported was a terrorist organization. Admitting into the United States individuals with terrorist ties is surely not a "less consequential context[,]" dkt 4 at 25, than the one at issue here.

USCIS' adoption of the "beyond any reasonable doubt" standard is particularly unreasonable when considered in light of the Adam Walsh Act as a whole. *See John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank*, 510 U.S. 86, 94 (1993) (statutory provisions should be read by reference to the whole act). The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]" under 18 U.S.C. § 4248. Under § 4248(d), the Government has the burden of proving that the respondent is sexually dangerous by "clear and convincing evidence." 18 U.S.C. § 4248; *United States v. Comstock*, 560 U.S. 126 (2010). This is a lesser standard than that which the USCIS applies to Adam Walsh Act visa petitions, even though the restriction of a person's liberty is at stake under § 4248. *Id.*; *see also United States v. Hunt*, 643 F. Supp. 2d 161, 179 (D. Mass. 2009) ("The clear and convincing evidence standard is an 'intermediate standard,' lying somewhere 'between preponderance of the evidence and proof beyond a reasonable doubt.'" (*quoting Addington v. Texas*, 441 U.S. 418, 425 (1979))).

USCIS's adoption of the "beyond any reasonable doubt" standard is also unreasonable when considered in isolation. The very provision at issue here — 8 U.S.C. § 1154(a)(1)(A)(viii) — creates an exception to the rule that individuals convicted of certain offenses may not petition for noncitizen relatives. Dkt 1 at ¶ 12. The exception allows certain individuals, otherwise barred, to

---

that they should be excepted from the adverse consequence if they establish some fact to the satisfaction of the relevant immigration authorities.

be able to successfully petition for their family members. Congress intended for this exception to be meaningful. *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883) (reciting the basic principle of statutory interpretation that courts should "give effect, if possible, to every clause and word of a statute …."). But, in practice, establishing no risk "beyond any reasonable doubt" is an impossible standard for I-130 petitioners to meet. Dkt 1 at ¶ 55 n.1. By adopting the "beyond any reasonable doubt" standard, the agency has, in effect, undermined Congress's clearly stated desire that at least some petitioners have a meaningful chance to receive an approval, notwithstanding a prior conviction for an Adam Walsh Act predicate offense. Put differently, the agency made Congress's express exception meaningless.

The statutory interpretation cases Defendants cite in which the Court prescribed a standard of proof actually cut against Defendants' position.[6] In *Woodby v. INS*, the Court adopted the "clear, unequivocal, and convincing" evidence standard in part because that standard "is no stranger to the civil law." 385 U.S. 276 (1966). Here, by interposing the criminal law's "beyond any reasonable doubt standard," USCIS has adopted a standard that *is* a complete "stranger to the civil law." *Id.*; *see also California ex rel. Cooper*, 454 U.S. at 93. Defendants also cite *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. ___, 131 S. Ct. 2238 (2011) for the proposition that Congressional silence does not foreclose a higher standard of proof. In *Microsoft*, the Court declined to upset the D.C. Circuit's long-applied "clear and convincing evidence" standard for patent invalidity cases because the key statutory phrase had a "settled meaning in the common

---

[6] Defendants cite two unavailing constitutional cases in defense of the agency's adoption of the "beyond any reasonable doubt" standard: *Addington v. Texas*, 441 U.S. 418 (1979), and *In re Winship*, 397 U.S. 358 (1970). In both cases the 14th Amendment dictated that the government meet a high burden before taking away a person's liberty. By contrast, USCIS has arrived at the "beyond any reasonable doubt" standard through erroneous statutory interpretation, not as a consequence of any actual or asserted constitutional obligation.

law" that had traditionally called for a heightened standard. 131 S. Ct. at 2245. There is no such "settled meaning" for the phrase "no risk."

Finally, in *Herman & MacLean v. Huddleston*, the Court explained that the interests of *both* parties must be balanced when prescribing evidentiary standards. 459 U.S. 375, 390 (1983) (adopting a preponderance standard for persons seeking recovery under § 10(b) of the Securities Exchange Act of 1934 (1934 Act), 48 Stat. 891, 15 U. S. C. § 78j(b)). Here, Defendants cite the government's interest in protecting beneficiaries, which may well be a valid interest in many cases. Dkt 4 at 24-25. Nowhere do Defendants acknowledge the countervailing interests. In visa petition proceedings, *both* the U.S. citizen *and* the noncitizen spouse have a substantial interest in having the petition correctly decided. Where the noncitizen is physically present in the United States, a denial of a visa petition will likely preclude the foreign national from acquiring lawful status in the United States, which carries significant consequences to both spouses, including the constant threat of the noncitizen's deportation, the noncitizen's inability to work lawfully in the United States, and the couple's inability to travel abroad together. An erroneous denial also carries significant stigma and shame, which can be particularly discouraging to petitioners who have taken substantial steps to rehabilitate themselves. The interests of U.S. citizen petitioners and noncitizen beneficiaries were not given adequate weight by USCIS when it prescribed the "beyond any reasonable doubt" standard.

For the foregoing reasons, USCIS's application of the "beyond any reasonable doubt" standard for no risk determinations is impermissible.

    **c.  Defendants' application of the Adam Walsh Act to visa petitions involving only adult beneficiaries is *ultra vires*.**

In response to the Plaintiffs' argument that the agency acted in excess of its delegated authority in implementing the Adam Walsh Act amendments, Defendants argue that the law's

purpose is to protect "the larger American 'public[.]'" Dkt 4 at 25 (quoting 42 U.S.C. § 16901). In support, Defendants cite the opening provision in Title I of the Adam Walsh Act, which concerns only one part of the Adam Walsh Act; *viz.*, the Sex Offender Registration and Notification Act ("SORNA"). Pub. L. No. 109-248, 120 Stat. 587, 590. The complete text of the provision states: "In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, *Congress in this Act establishes a comprehensive national system for the registration of those offenders* [and proceeds to identify child victims.]" 42 U.S.C. § 16901 (emphasis added). The act's immigration-related provisions fall under a separate title — Title IV — which does not contain a specific declaration of purpose. Pub. L. No. 109-248, 120 Stat. 587, 622.

Moreover, the BIA and USCIS consistently assert that the rationale underlying the immigration provisions of the Adam Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." *Introcaso*, 26 I&N Dec. at 305; *see also Matter of Aceijas-Quiroz*, 26 I&N Dec. 294, 295 (BIA 2014); *Jackson and Erandio*, 26 I&N Dec. at 316; Aytes Memo at 1. It also bears mentioning that Congress gave the Adam Walsh Act the short title, "Adam Walsh *Child* Protection And Safety Act of 2006." Pub. L. No. 109-248, 120 Stat. 587, 587 (emphasis added). Plainly, the primary purpose of the Adam Walsh Act is to protect children, not the public at large, and it is evident that this purpose is not advanced by denying Mr. Struniak's visa petition for his adult wife who does not have any children.

Even assuming the purpose of the INA's Adam Walsh Act amendments is to protect the broader public, it is unclear how refusing the Plaintiffs' I-130 petition serves that purpose. Mr. Struniak is not going anywhere; he is a United States citizen. Dkt 1 at ¶ 3. Denying the I-130

surely does not benefit Ms. Minigalina. Plaintiffs have been married and residing together for nearly a decade. Dkt 1 at ¶ 26. They intend to continue residing together — at least until she is removed from the United States. Indeed, the person most adversely affected by Defendants' action is Ms. Minigalina herself, who is precluded from enjoying the rights and privileges that accompany lawful permanent residence, including the protection against deportation. The broader American public is not served by Ms. Minigalina living under the threat of deportation, nor would it be served by her deportation.

### d. Application of the Adam Walsh Act to deny Plaintiffs' I-130 Petition is impermissibly retroactive.

Defendants argue that denial of Plaintiffs' Form I-130 under the Adam Walsh Act is not an impermissibly retroactive application of the law. First, they contend that this Court owes *Chevron* deference to the BIA's decision in *Matter of Jackson and Erandio,* 26 I&N Dec. 314 (BIA 2014), which held that the Adam Walsh Act is not impermissibly retroactive when applied to convictions that occurred before its enactment. Dkt 4 at 25 n.3. Next, they propose as the triggering event for application of the statute the date Mr. Struniak filed his petition, rather than the date of his prior conviction. Dkt 4 at 26-27. Then, they argue that the Adam Walsh Act may be applied to Mr. Struniak because it does not create liability for him, but merely denies him the ability to obtain a benefit. Dkt 4 at 27. Finally, Defendants argue that the Adam Walsh Act addresses post-enactment dangers. *Id.*

It is well established that courts owe no deference to agencies when reviewing whether a change in law is impermissibly retroactive. *INS v. St. Cyr,* 533 U.S. 289, 320 n. 45 (2001); *Quantum Entm't Ltd. v. United States DOI,* 714 F.3d 1338, 1342 (D.C. Cir. 2013) ("In applying th[e *Landgraf*] test, the court owes no deference to the Board's retroactivity analysis under *Chevron*[.]"); *Tyson v. Holder,* 670 F.3d 1015, 1017 (9th Cir. 2012). "[R]etroactivity is a

matter on which judges tend to have 'sound . . . instinct[s],' and familiar considerations of fair

notice, reasonable reliance, and settled expectations offer sound guidance." *Landgraf v. USI Film*

*Products*, 511 U.S. 244, 270 (1994) (*quoting Danforth* v. *Groton WaterCo.*, 178 Mass. 472, 476,

59 N. E. 1033, 1034 (1901) (Holmes, J.)). Furthermore, the taking away of rights for a past act is,

absent a direct signal from Congress, heavily disfavored. *Landgraf*, 511 U.S. at 265 ("Elementary

considerations of fairness" militate against retroactive application of the law); *Kaiser Aluminum &*

*Chemical Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S. Ct. 1570, 1586, (1990) (Scalia, J.,

concurring) ("[T]hat the legal effect of conduct should ordinarily be assessed under the law that

existed when the conduct took place has timeless and universal appeal.").

 The right to petition for noncitizen family members is among the most important rights

American citizens enjoy, and is in fact highlighted in the government's promotional materials on

naturalization — listed alongside the ability to vote and to serve on a jury. *See* USCIS, M-618,

*Welcome to the United States: A Guide for New Immigrants* at 90-91, September 2007, *available*

*at* http://www.uscis.gov/sites/default/files/files/nativedocuments/M-618.pdf ("Here are some good

reasons [to consider becoming a U.S. citizen] … [b]ringing family members to the U.S."). Since as

early as 1952, a U.S. citizen like Mr. Struniak has been vested with the right to petition for a

noncitizen spouse. Immigration and Nationality Act of 1952, Pub. L. No. 82–414, 66 Stat. 163,

180 (codified as amended at 8 U.S.C. § 1101 *et seq*). Defendants' retroactive application of the

Adam Walsh Act amendments unreasonably interferes with that right, and it "is no answer to say,

as [Defendants] suggest[], that [Struniak] could have avoided any adverse consequences if he

simply" did not petition for his wife. *Cf. Vartelas v. Holder*, 132 S. Ct. 1479, 1487 (2012).

 If, as Defendants maintain, "an agency does not give a statute retroactive effect when it

applies a statute to requests for benefits filed after enactment of the statute[,]" dkt 4 at 26, the

Supreme Court's decisions in *INS v. St. Cyr*, 553 U.S. 589 (2001), and *Vartelas*, 132 S. Ct. 1479, would surely have come out the other way. In *St. Cyr*, the Court considered the case of a noncitizen who was convicted of a deportable offense on March 6, 1996. *St. Cyr*, 553 U.S. at 293. At the time of the conviction, he was eligible for a discretionary waiver of deportation under former INA § 212(c). *Id.* at 295-97. On September 30, 1996, however, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. Law No. 104–208, 110 Stat. 3009-546, a sweeping overhaul of the INA that eliminated the 212(c) waiver. *Id.*

The agency initiated removal proceedings against Mr. St. Cyr on April 10, 1997. *Id.* at 293. Because the Attorney General interpreted IIRIRA to apply to convictions occurring prior to its enactment, St. Cyr was unable to seek a 212(c) waiver in removal proceedings. *Id.* He thus filed a habeas corpus petition alleging that the restrictions on discretionary relief from deportation contained in the 1996 statutes do not apply to removal proceedings brought against a noncitizen who pleaded guilty to a deportable crime before its enactment. *Id.*

The Supreme Court agreed. *Id.* at 315. Ruling that the statute could not be applied to St. Cyr, the Court explained that retroactively interpreting IIRIRA would attach a "new disability" to his past conduct that resulted in the conviction. *Id.* at 321. St. Cyr was thus able to apply for the discretionary deportation waiver – a "principal benefit[]" permitted under his conviction. *Id.* at 323. Here, as in *St. Cyr*, Defendants' characterization of the law governing retroactivity is mistaken. *Compare* Dkt 4 at 25-27 *with id.*; *see also Vartelas*, 132 S. Ct. 1479 (holding that government's denial of reentry to the United States by noncitizen with pre-IIRIRA conviction was impermissibly retroactive).

As support for their contention that the filing of an I-130 petition is the "triggering event for application of the statute," Dkt 4 at 27, Defendants rely upon *Coalition for Common Sense in*

*Government Procurement v. United States*, 707 F.3d 311, 318 (D.C. Cir. 2013), *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006), and *Boniface v. DHS*, 613 F.3d 282 (D.C. Cir. 2010). However, *Coalition for Common Sense* did not involve retroactive application of a *statute* at all. In *Coalition for Common Sense*, a multi-industry interest group representing pharmaceutical companies challenged the Defense Department's promulgation of a rule in March 2009 requiring the industry to refund the difference between the retail price and the reduced Defense Department price for certain prescriptions filled after January 28, 2008. 707 F.3d at 312-15. The statute that the rule implemented specifically provided that the Defense Department was to pay the reduced price "[w]ith respect to any prescription filled after January 28, 2008[.]" 10 U.S.C. § 1074g(f). Thus, the regulation the agency promulgated did nothing more than what the statute required – it did not reach back to create liability for an action that occurred prior to the effective date specified in the statute. *Coalition for Common Sense* 707 F.3d at 318 ("It was the passing of the *statute*, not the promulgation of a *regulation*, that determined when prescriptions became subject to [the reduced Defense Department price].") (internal quotations omitted) (emphasis in original). Because *Coalition for Common Sense* did not involve retroactive application of a law, *Landgraf* was not discussed. *Id*. Here, by contrast, Defendants are applying a 2006 law to take away Plaintiff's "vested rights" based on a conviction he acquired in 1993. *Coalition for Common Sense* is inapposite and unavailing.

The government's reliance on *Fernandez-Vargas* is similarly misplaced. There, the Court considered whether a statute authorizing the reinstatement of prior removal orders for individuals who had illegally reentered the United States, 8 U.S.C. § 1231(a)(5), could be applied to individuals who were ordered deported and reentered before the statute was enacted. 547 U.S. at 33. The Court concluded that retroactive application was permissible because Fernandez-Vargas,

by unlawfully remaining in the country, had engaged in a "continuing violation" of the law. 547

U.S. at 44. It was his "choice to continue his illegal presence … that subjects him to the new and

less generous legal regime[.]" *Id.* By contrast, Mr. Struniak is not engaging in any "continuing

violation" of the law. He was convicted and sentenced in 1993 and subsequently released. His

desire to sponsor his noncitizen spouse for residency, so that they might live together as husband

and wife in the United States, ought not subject him to further punishment. The government's

denial of Mr. Struniak's I-130 application penalizes him for an "entirely past" act which he is

"helpless to undo." *Fernandez-Vargas*, 547 U.S. at 44.

Finally, in *Boniface*, the D.C. Circuit upheld the Transportation Security Administration's

retroactive application of a regulation invoked to deny a driver's license to transport hazardous

materials to a person who, prior to promulgation of the regulation, was convicted of a crime. 613

F.3d at 284. Critical to the court's holding was that the regulatory regime did not bar the applicant

from obtaining the license, but simply created a rebuttable "evidentiary presumption" against

issuing him one, and the driver's license applicant could seek a waiver *Id.* at 288. This case does

not involve an analogous "evidentiary presumption." Rather, by imposing a practically

unachievable "beyond any reasonable doubt" standard of proof to establish eligibility for the no

risk exception, Defendants have created a de facto "bar," *id.*, which precludes U.S. citizens with

certain past convictions from petitioning for noncitizen relatives. *See* Neufeld Memo at 2

("[G]iven the nature and severity of many of the underlying offenses and the intent of the AWA,

approval recommendations should be rare."); Dkt 1 at ¶ 68 ("This heightened standard is, in

practice impossible for a petitioner to meet …").[7] Unbeknownst to Mr. Struniak in 1993, his

_____

[7] Defendants do not dispute Plaintiffs' description of the real life impact of the "beyond any
reasonable doubt" standard, nor do they point to a single case in which the agency has approved an
I-130 petition filed by a petitioner convicted of a specified offense against a minor. Dkt 1 at ¶ 55

conviction would, over 20 years later, "automatically trigger[] additional legal consequences[,]"*Koch v. SEC*, 2015 U.S. App. LEXIS 12077 (D.C. Cir. 2015) —  namely, the inability to petition for his noncitizen wife.

Defendants argue that the Adam Walsh Act is not retroactive because it targets a present danger. Dkt 4 at 27 (*citing Vartelas*, 132 S. Ct. at 1489 n.7). The *Vartelas* footnote upon which Defendants rely provides that a law "prohibiting persons convicted of a sex crime against a victim under 16 years of age from working in jobs involving frequent contact with minors" does not operate retroactively because it addresses post-enactment dangers. 132 S. Ct. at 1489 n.7 (emphasis added). The post-enactment danger, the Court stated, is the danger inherent in having those with a history of child molestation "working in close proximity to children." *Id*. Defendants offer no explanation for how, in I-130 cases involving only an adult beneficiary, the Adam Walsh Act targets a present danger like the one the Court recognized in the *Vartelas* footnote. Where the beneficiary is only an adult spouse, the Adam Walsh Act does not address a post-enactment danger. This very case underscores that point: There is no dispute that Mr. Struniak and his noncitizen spouse are already married and living together, and that there are no children in the relationship. Furthermore, there is no dispute that Plaintiff Struniak has not recidivated. Nor is there any evidence to otherwise suggest he poses a present danger. Denying Plaintiffs' I-130 petition does nothing to enhance Ms. Minigalina's safety or the safety of the broader public and, at the same time, it harms the Plaintiffs. The person most adversely impacted by the agency's decision is, in fact, Ms. Minigalina, who is precluded from enjoying the rights and privileges that accompany lawful permanent residence, including protection against deportation. It is not "plausible that Congress' solution to the problem of" crimes against children "would be to pass a

n.1. When deciding a motion to dismiss, a court must accept as true the well-pleaded factual allegations set forth in the complaint. *Doe v. Rumsfeld,* 683 F.3d 390, 391 (D.C. Cir. 2012).

law that would" prevent individuals long-ago convicted of such crimes from ever obtaining immigration benefits for their adult spouses. *Vartelas*, 132 S. Ct. at 1489 n.7.

Finally, Defendants, claiming to "appl[y]" *Smith v. Doe*, 538 U.S. 84 (2003), argue that the Adam Walsh Act is not punitive because it does not restrict Plaintiffs' mobility or ability to seek employment as would a traditional form of punishment. Dkt 4 at 28. This gets *Smith v. Doe*'s logic backwards. In *Smith v. Doe*, one of the reasons the Supreme Court held that the Alaska sex offender registration statute was *not* punitive was because it "does not restrain activities sex offenders may pursue." *Smith*, 538 U.S. at 100. That is exactly what the Adam Walsh Act does. It presumptively prohibits U.S. citizens from petitioning for their noncitizen spouses, which is a punitive measure designed not to protect beneficiaries but to further punish U.S. citizens for past offenses. [8]

For the foregoing reasons, Defendants have failed to justify their retroactive application of the INA's Adam Walsh Act amendments to the Plaintiffs' I-130 petition.

**e.** ***Obergefell v. Hodges* undermines Defendants' argument that there is no protected liberty interest in Plaintiffs' right against interference by the government in matters of marriage and family life.**

As Defendants correctly note, a plurality of the Supreme Court recently concluded that U.S. citizens do not have a protected liberty interest in residing in the United States with their noncitizen spouses. Dkt 4 at 30 (*citing Kerry v. Din*, 135 S. Ct. 2128 (2015)). But Justice Scalia's

---

[8] Defendants state that the Adam Walsh Act "restricts a visa petitioner's ability to sponsor a foreign national for admission into the United States as a family-based immigrant in the event the agency determines the petitioner has failed to establish he poses no risk to the foreign national." Dkt 4 at 27. That is imprecise. Under the Adam Walsh Act, individuals convicted of a "specified offense against a minor" are presumed to be ineligible to petition for their spouses. 8 U.S.C. § 1154(a)(1)(A)(viii) (stating that the provision allowing U.S. citizens to file visa petitions for their noncitizen spouses "shall not apply" to individuals convicted of a predicate offense). The no risk clause creates a narrow exception. *Id*. It is an exception that USCIS adjudicators are instructed to "rare[ly]" invoke, Neufeld Memo at 2, and that, in practice, is impossible to meet. Dkt 1 at ¶ 55.

formalistic opinion in *Din* – which garnered only three votes – is in tension with the landmark case

of this term, *Obergefell v. Hodges*, 2015 U.S. LEXIS 4250 (2015), which held that the Constitution

guarantees to same sex couples the right to marriage.

In *Din*, Justice Scalia adhered closely to *Washington v. Glucksberg*, 521 U. S. 702 (1997),

where the Court announced that fundamental liberty interests only exist where the interest is

"objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of

ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Din*, 135 S.

Ct. at 2134 (*quoting Glucksberg*, 521 U.S. at 720-21). But in *Obergefell*, the Court explained that

*Glucksberg* does not control where the right at issue involves marriage and intimacy: "[W]hile th[e

*Glucksberg*] approach may have been appropriate for the asserted right there involved (physician-

assisted suicide), it is inconsistent with the approach this Court has used in discussing other

fundamental rights, including marriage and intimacy." *Obergefell*, 2015 U.S. LEXIS at *35; *see

also id.* at *50-51 ("No union is more profound than marriage, for it embodies the highest ideals of

love, fidelity, devotion, sacrifice, and family."). And marriage and intimacy are precisely what is at

stake here. Therefore, *Obergefell* counsels in favor of revisiting *Swartz v. Rogers*, 254 F.2d 338

(D.C. Cir. 1958) and its progeny. Dkt 1 at ¶ 73-75. At a minimum, *Obergefell* merits careful

examination of Defendants' implementation and application of the Adam Walsh Act, which

unreasonably restricts Plaintiffs' marital rights and their constitutionally protected liberty interest

in "establish[ing] a home" in the United States. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to transfer venue or,

in the alternative, motion to dismiss.

Respectfully submitted this 11th day of September, 2015.

/s/ *Dree K. Collopy*
Dree K. Collopy
D.C. Bar Number:  985545
BENACH RAGLAND LLP
1333 H Street, N.W.
Suite 900 West
Washington, D.C.  20005
T: (202) 644-8600
F: (202) 644-8615
E: dcollopy@benachragland.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user(s):

> Hans H. Chen
> U.S. Department of Justice
> Civil Division
> Office of Immigration Litigation
> District Court Section
> P.O. Box 868, Ben Franklin Station
> Washington, DC 20044
> Email: hans.h.chen@usdoj.gov

> /s/ *Dree K. Collopy*_____
> Dree K. Collopy
> D.C. Bar Number:  985545
> BENACH RAGLAND LLP
> 1333 H Street, N.W.
> Suite 900 West
> Washington, D.C.  20005
> T: (202) 644-8600
> F: (202) 644-8615
> E: dcollopy@benachragland.com

> *Counsel for Plaintiffs*