## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANK SCOTT STRUNIAK and | ) | |
| AYGUL MINIGALINA, | ) | |
| | ) | Civil No. 1:15-cv-00852-RMC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEON RODRIGUEZ, Director, U.S. Citizenship | ) | |
| and Immigration Services, in his official capacity, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT

Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Transfer Venue or, in the Alternative, to Dismiss the Complaint ("Pls.' Opp'n") fails to provide the Court with a sufficient basis to retain this litigation in this district.  The Court should, therefore, transfer this action to the Eastern District of Virginia, the location of Plaintiffs' residence and the location of the Government office that adjudicated their visa petition.

Plaintiffs have also failed to provide a sufficient basis to avoid the dismissal of their claims subject to the jurisdiction-restricting provision of 8 U.S.C. § 1252(a)(2)(B)(ii).  Finally, Plaintiffs' remaining claims relating to the burden of proof, application of the Adam Walsh Act to adult beneficiaries, and allegedly retroactive application of the Adam Walsh Act, still fail to state a claim.  If the Court does not transfer venue, it should dismiss the Complaint for lack of jurisdiction and for failure to state a claim.

I.       **The Court should transfer venue to the Eastern District of Virginia.**

In Defendants' Motion, Defendants discussed the bases for transferring this action to the Eastern District of Virginia.  Both the parties' private interests and the public interest should lead the Court to transfer venue.  Plaintiffs' arguments otherwise lack merit.

A.       **The balance of private interests substantially favors transfer.**

Plaintiffs concede that the decision they challenge was issued in Virginia.  (Opp'n Br. at 5.)  Plaintiffs also concede that they both reside in the Eastern District of Virginia.  (Compl. ¶ 24.)  Those are the two most compelling factors in the Court's consideration of Plaintiffs' venue choice and Defendants' motion to transfer venue.  Those factors tip the balance in favor of transfer.  *See* 28 U.S.C. §§ 1391(e), 1404(a).

In their Opposition, Plaintiffs argue that three of the five Defendants reside in this district. (Pls.' Opp'n at 4.)  That argument, however, relies on logic rejected by controlling Circuit authority.  The Defendants who reside in this district, Leon Rodriguez, Jeh Johnson, and Loretta Lynch, consist of headquarters officials, including two cabinet members.  Plaintiffs fail to describe how those three Defendants played a part in denying Plaintiffs' visa petition, because they did not.  The headquarters location of a federal agency, without more, cannot serve as a basis for proper venue.  *See Cameron v. Thornburgh*, 983 F.2d 253, 256-57 (D.C. Cir. 1993); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (holding that, when the only connection to the District of Columbia "is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia.").  Taken to its logical conclusion, Plaintiffs' justification for venue based merely on the location of agency leaders would locate nearly all suits against the federal government in the District of Columbia.  Circuit authority prohibits that result.  *See Cameron*, 983 F.2d at 256-57.

While Plaintiffs state that "this case – like all Adam Walsh Act cases – was substantially decided at USCIS headquarters," (Pls.' Opp'n at 5), Plaintiffs provide no support for that conclusory assertion.  As explained in Defendants' Motion, that position is baseless because the Fairfax, Virginia, office of U.S. Citizenship and Immigration Services ("USCIS") corresponded with Plaintiffs in the course of the petition process, conducted an in-person interview, and issued both the Notice of Intent to Deny the petition and the denial decision.  (Compl. ¶ 26; Defs.' Mot. Exs. A-G.)  Plaintiffs cannot genuinely dispute those facts and provide no basis to support such a dispute.  Even if Defendants relied on a "template denial form that was developed and disseminated by USCIS headquarters," as Plaintiffs claim (Pls.' Opp'n at 5), Plaintiffs acknowledge that USCIS's field office in Fairfax, and not USCIS's headquarters office, decided to deny Plaintiffs' visa petition.

Although Plaintiffs point out that the office that denied the visa petition filed by Scott Struniak ("Struniak") is called the "Washington Field Office" (Pls.' Opp'n at 5), that mere designation is irrelevant to the Court's venue determination.  As Defendants pointed out in their Motion, the Washington Field Office adjudicated Struniak's visa petition at its location in Fairfax, Virginia.  (Compl. ¶ 26; Defs.' Mot. Exs. A, B, F.)  That fact, not the name of the office, fixes the proper venue for this case in Virginia.  As another court in this district found, "venue is clearly proper in the Eastern District of Virginia because defendant Susan Dibbins, acting District Director of USCIS's Washington Field Office, resides in that district, and the events or omissions giving rise to plaintiff's claims have occurred or will occur there.  Specifically, plaintiff's applications for a travel document and for employment authorization are being adjudicated at the USCIS Washington office located in Fairfax, Virginia."  *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008).  The complaint in this case similarly names several

USCIS officials who lead the field office that denied Plaintiffs' visa petition and who supervise the employees who actually played a role in Plaintiffs' visa denial.   (Compl. ¶ 25; Defs.' Mot. Ex. A at 5.)  The Court should, therefore, follow *Al-Ahmed* and transfer venue to the Eastern District of Virginia.

Plaintiffs point out that the USCIS facility in Fairfax adjudicates applications filed by residents of both Virginia and Washington, D.C.  (Pls.' Opp'n at 5.)  But that fact would be relevant only if Plaintiffs actually resided in Washington, D.C.  *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (plaintiff's choice of forum is "conferred less deference by the court when [it] is not the plaintiff's home forum," citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)).  Finally, it is true that USCIS does not operate a field office in the District of Columbia (*see* Pls.' Opp'n at 5), but that fact only highlights the need to transfer this case to the district where USCIS does operate the field office responsible for denying Plaintiffs' visa petition.  *See Al-Ahmed*, 564 F. Supp. 2d at 18.  This Court, after all, should not base venue in this district simply because USCIS is headquartered here.  *See Cameron*, 983 F.2d at 256-57.

Plaintiffs accuse Defendants of raising a red herring when pointing out that the Board of Immigration Appeals affirmed USCIS's visa denial from the BIA's offices in Falls Church. (Pls.' Opp'n at 6.)  But it is Plaintiffs who attempt to distract the Court by discussing the BIA's role as "the highest administrative body for interpreting and applying immigration laws."  (Pls.' Opp'n at 6.)  Not every BIA ruling carries precedential, nationwide weight.  *See* 8 C.F.R. § 1003.1(g).  For a non-precedential decision made by a single BIA member – such as the one affirming Struniak's visa denial (Defs.' Mot. Ex. H) – its "binding character as a ruling stops short of third parties," and it is "conclusive only as between [the agency] itself and the [petitioner] to whom it was issued."  *United States v. Mead Corp.*, 533 U.S. 218, 233 (2001).  So,

despite what Plaintiffs claim (Pls.' Opp'n at 6), when the BIA decided this case from its Falls Church, Virginia, offices, it was, in fact, merely resolving a localized dispute between Virginia residents and Government officials located in Virginia.

Finally, any alleged involvement by the FBI in checking Plaintiffs' backgrounds does not establish venue in this Court.  (Pls.' Opp'n at 6-7.)  The FBI – even if it is a division of the U.S. Department of Justice – is not a named party here and has no factual connection whatsoever to the issues the Complaint addresses.  In *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 U.S. Dist. LEXIS 52549 (D.D.C. July 23, 2007), a case cited by Plaintiffs (Pls.' Opp'n at 8), the court held that the FBI's check of an applicant's background as part of a USCIS adjudication did not establish venue in Washington, D.C.  That court transferred venue to the location of the USCIS field office that had denied the application.  *See id.* at *21-22 ("That the FBI, in Washington, D.C., may play a role in the processing of Plaintiff's application for naturalization therefore does not alter the fact that the ultimate decision on Plaintiff's application for naturalization – the sole decision challenged in Plaintiff's Complaint – will be made at the USCIS office Houston, Texas.").  The Court should do the same and transfer venue to the Eastern District of Virginia.

> **B.** **The balance of private interests substantially favors transfer.**

The public interest also militates in favor of a transfer of this case to the Eastern District of Virginia.  Plaintiffs are incorrect when they claim that "it is congestion – not adjudication speed – that courts should consider in weighing where the public interest lies for purposes of motions to transfer."  (Pls.' Opp'n at 8.)  First, the case Plaintiffs cite, *Abusadeh*, does not support that proposition.  (*Id.* (citing *Abusadeh*, 2007 U.S. Dist. LEXIS 52549, at *10-12).)  Second, adjudication speed is an indication of congestion.  "While 'congestion alone is not sufficient reason for transfer, relative docket congestion *and potential speed of resolution* is an appropriate factor to [consider].'"  *Parkridge 6, LLC v. U.S. Dep't of Transp.*, 772 F. Supp. 2d 5,

8 (D.D.C. 2009) (quoting *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C.Cir.1974)) (emphasis added).  Here, the Eastern District of Virginia adjudicates a civil case, on average, 2.6 months faster than this District, indicating that the Virginia court is less congested.  *See id.*; U.S. Courts, Federal Court Management Statistics, http://www.uscourts.gov/statistics/table/na/federal-courtmanagement-statistics/2015/03/31-2.

Lastly, while Plaintiffs argue that transferring venue would lead to delay, transfer to the Eastern District of Virginia would grant Plaintiffs the offsetting benefit of a faster-moving court. *See id.*  Even if transfer did cause delay, that should not affect the Court's venue adjudication. Any delay would arise from Plaintiffs' imprudent choice to file their lawsuit based on the headquarters location of the agency that denied their visa petition.  Delay, therefore, is not unnecessary, but required to prevent the abuse of venue that this Court and the D.C. Circuit guard against.  *See Cameron*, 983 F.2d at 256-57; *see also Joyner v. District of Columbia*, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003); *Aftab*, 597 F. Supp. 2d at 81.

Defendants have demonstrated that venue is proper in the Eastern District of Virginia and that the balance of private and public interests militate towards transfer to that district.  The Court should, therefore, grant Defendants' Motion to Transfer Venue.

II.     **The Court lacks subject matter jurisdiction over several of Plaintiffs' claims.**

In their Motion to Dismiss, Defendants explained how the jurisdiction-limiting provision of 8 U.S.C. § 1252(a)(2)(B)(ii) precludes the Court from reviewing USCIS's discretionary "no-risk" determination involving Struniak, USCIS's weighing of the evidence that led to that determination, and the burden of proof that USCIS employed in reaching that determination. Plaintiffs' arguments to the contrary are meritless.

**A.      The Court is precluded from reviewing Defendants' discretionary finding that Struniak failed to establish that he posed no risk to his visa beneficiary.**

Plaintiffs correctly acknowledge that district courts may not review claims arising from purely discretionary denials of immigration benefits, but Plaintiffs misread the denial of their visa petition in arguing that USCIS failed to exercise its discretion in their case.  Plaintiffs claim that USCIS's "no risk determination in Plaintiffs' case was not the result of an exercise of discretion," but arose "because Plaintiff did not submit a document the agency *claims* it required Plaintiffs to produce … its risk assessment."  (Pls.' Opp'n at 10.)  Plaintiffs are mistaken.  As USCIS's denial notice makes clear, its denial of Plaintiffs' visa petition reflected the agency's discretionary decision that Struniak had failed to meet his burden that, as someone convicted of a sex crime against children, he posed no risk to his beneficiary:

> Upon review of your response and supporting evidence, USCIS finds that the evidence you submitted does not demonstrate, beyond a reasonable doubt, that you pose no risk to the safety and well-being of your beneficiary, Aygul Failovna Minigalina.
>
> You have failed to overcome the finding that you are ineligible to file a family-based visa petition on account of your conviction for a specified offense against a minor as defined within the Adam Walsh Act.
>
> Thus, *USCIS in its exercise of sole and unreviewable discretion has determined that you have not established that you pose no risk to the beneficiary.*

(Defs.' Mot. Ex. A at 4 (emphasis added).)  Struniak's failure to provide the court transcripts sought by USCIS did not preclude USCIS from making the discretionary decision to deny Plaintiffs' visa petition.  Had USCIS based its decision on Struniak's mere failure to provide necessary information, USCIS would have characterized its denial as a failure to prosecute or abandonment.  *See* 8 C.F.R. § 103.2(b)(13)(i).  Instead, USCIS provided a substantive, discretionary basis for its denial.  (Defs.' Mot. Ex. A at 1-4.)

Plaintiffs claim, incorrectly, that USCIS admitted it could not reach any discretionary decision when it wrote in its denial notice that Struniak's missing criminal trial transcripts "would have enabled USCIS to decide whether your contention of subsequent good moral character, despite the convictions, are legitimate and would have eventually led to an assessment of no risk." (Defs.' Mot. Ex. A at 4, *quoted in* Pls.' Opp'n at 11.)  In that passage, USCIS was not describing its inability to make a discretionary no-risk determination.  USCIS, had, in fact, made a discretionary determination, as it noted elsewhere in the denial notice.  (Defs.' Mot. Ex. A at 4.)  USCIS was, instead, informing Plaintiffs that it might have reached a *different* discretionary determination had Struniak submitted his transcripts and had those transcripts showed that the charges of sex crimes against a minor had been fabricated, as he claimed to USCIS.  (Defs.' Mot. Ex. A at 4.)

Just as a petitioner must establish he is a United States citizen or lawful permanent resident and has the requisite familial relationship with the beneficiary, the petitioner whose criminal history implicates the Adam Walsh Act must prove that despite his conviction, there is "no risk" to any primary or derivative beneficiary.  *See* 8 U.S.C. § 1154(a)(1)(A)(viii).  In its denial notice, USCIS informed Struniak that it never received the criminal trial transcripts that might have helped him meet his burden, in USCIS's discretion.  Because he failed to meet that burden, USCIS's discretionary decision about Struniak's risk remains unreviewable by this Court.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

## B.   Section 1252(a)(2)(B)(ii) precludes the Court from reviewing USCIS's weighing of the evidence.

In disputing that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of USCIS's weighing of the evidence, Plaintiffs raise hypothetical and misplaced concerns about the scope of the jurisdiction-limiting statute.  Plaintiffs argue that application of Section 1252(a)(2)(B)(ii)

would insulate from review cases where "agency officials flagrantly violate the Constitution by, for example, refusing to accept relevant evidence or openly declaring bias against" a petitioner. (Pls.' Opp'n at 13.)  But here, Plaintiffs have not accused Defendants of preventing them from presenting relevant evidence.  Nor have they accused USCIS of openly expressing bias against Struniak.  And if Plaintiffs had leveled those charges, Section 1252 would not preclude the Court's consideration of a colorable statutory violation or due process claim because an administrative decision "that denies due process does not involve the exercise of discretion and . . . does not preclude review of due process challenges."  *Sanchez-Cruz v. I.N.S.*, 255 F.3d 775, 779 (9th Cir. 2001) (internal citation and quotations omitted); *see also Maldonado-Perez v. I.N.S.*, 865 F.2d 328, 341 (D.C. Cir. 1989) (justiciable statutory and due process violation would arise from precluding alien from presenting evidence).  Indeed, Plaintiffs acknowledge that Defendants invited Struniak to submit additional evidence, an opportunity he spurned.  (Compl. ¶ 29; Ex. F.)  Here, instead, Plaintiffs merely claim that USCIS improperly weighed the evidence that they submitted.  The manner in which USCIS weighed Plaintiffs' evidence, however, forms part of the decision insulated from judicial review under Section 1252(a)(2)(B)(ii).  *See Quijada-Morales v. Att'y Gen.*, --- F. App'x ----, 2015 WL 3757057, at *1 (3d Cir. June 17, 2015); *Saloum v. U.S. Citizenship & Immgr. Servs.*, 437 F.3d 238, 244 (2d Cir. 2006).

> **C.**     **Section 1252(a)(2)(B)(ii) precludes the Court from reviewing USCIS's use of the "beyond any reasonable doubt" standard.**

Plaintiffs argue, incorrectly, that the jurisdiction-limiting provisions of Section 1252(a)(2)(B)(ii) do not apply to USCIS's use of the "beyond any reasonable doubt" standard. For their argument, Plaintiffs rely extensively on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991).  But that case is distinguishable, as the district court properly found in *Bremer v. Johnson*, No. 13-cv-1226, 2014 U.S. Dist. LEXIS 174035 (W.D. Mo. Dec. 17, 2014).

*McNary* involved a review process for individual denials of applications for special agricultural workers ("SAW").  The Supreme Court found that the jurisdiction-limiting statute in that case related only to individual denials and did not, therefore, preclude general constitutional challenges to the implementation of the SAW program.  *McNary*, 498 U.S. at 491-92.  As the *Bremer* court properly found, however, the jurisdiction-limiting provision in this case is broader than the provision in *McNary*.  In this case, Section 1252(a)(2)(B)(ii) does not focus only on individual determinations but relates "to any other decision or action."  *See Bremer*, 2014 U.S. Dist. LEXIS 174035, at *9.

Plaintiffs claim that *Bremer* improperly extended the jurisdiction-limiting effects of Section 1252(a)(2)(B)(ii) beyond the individual "no risk" discretionary determination set forth in 8 U.S.C. § 1154(a)(1)(A)(viii) to the application of the "beyond any reasonable doubt" standard that USCIS uses to reach its no risk determinations.  (Pls.' Opp'n at 17-18.)  It is Plaintiffs who err, however, in divorcing the application of the "beyond any reasonable doubt" standard from the individual "no risk" determination at issue here.  As Defendants argued in their moving brief (Defs.' Mot. at 18-19), the "beyond any reasonable doubt" standard derives directly from the text of the statute.  In determining whether a visa petitioner with certain sex crime convictions has shown that he poses "no risk" to his visa beneficiary, USCIS is doing no more and no less than determining whether that visa petitioner has shown beyond any reasonable doubt that he poses no risk to his beneficiary.  In other words, the "beyond any reasonable doubt" standard is the means by which USCIS determines if a petitioner presents "no risk" to his beneficiary.  That determination does not lie outside the scope of the no-risk determination made under Section 1154(a)(1)(A)(viii); it *is* the determination made under Section 1154(a)(1)(A)(viii).  As such, it falls under the jurisdiction-limiting provision of Section 1252(a)(2)(B)(ii).  Because that

jurisdiction-limiting provision is broad enough to encompass the "beyond any reasonable doubt" standard, Congress had no reason to draft any broader jurisdiction-limiting statute, as Plaintiffs suggest.  (Pls.' Opp'n at 15-16.)

## III.    The Complaint fails to state a claim upon which relief may be granted.

Even if the Court had jurisdiction to consider Plaintiffs' claims, they would still fail for failure to state a claim.

### A.    The standard of proof stems from the statute and is not ultra vires.

Plaintiffs argue that no *Chevron* deference is owed to Defendants' application of the "beyond any reasonable doubt" standard of proof to petitions implicating the Adam Walsh Act because that standard is unreasonably higher than that which is applied "in nearly all immigration benefits adjudications" – the preponderance of the evidence standard.   (Pls.' Opp'n at 22.)  Plaintiffs, however, misunderstand Defendants' position.

Defendants do not argue that the Court actually owes *Chevron* deference to the "beyond any reasonable doubt" standard USCIS applies in deciding visa petitions whose petitioners' criminal convictions implicate the Adam Walsh Act.  No "reasonableness" analysis under *Chevron's* step two is required here – and the Court can cease *Chevron* analysis with step one – because Congress has spoken to the issue unambiguously through the requisite "no risk" determination the Secretary of Homeland Security must make per the plain language of the statute.  *See* Pub. L. No. 109-248, § 402(a) (codified at 8 U.S.C. §§ 1154(a)(1)(A)(viii)(I) and (B)(i)(I)).

Plaintiff counters that application of the "beyond any reasonable doubt" standard derives from the "Aytes Memo."  Plaintiffs argue this Court's focus lies with the "Aytes Memo," rather than with the statutory language, and that Defendants' basis for applying this higher standard does not carry the "respect" or "power to persuade" required under the more applicable *Skidmore*

deference.  (Pls.' Opp'n at 19-20 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).)

But to accept this argument, and to decline application of *Chevron* to the standard of proof

analysis, requires this Court to disregard the plain meaning of the term "no risk" used within the

statute itself.   Because the "beyond any reasonable doubt" standard derives directly from the text

of the statute, it definitively applies here, and its application is not *ultra vires*.

> **B.      The Adam Walsh Act addresses potential dangers to the public, rather than just to children.**

Plaintiffs additionally argue against the application of the Adam Walsh Act to cases

involving adult beneficiaries by pointing to sexual offender registration requirements present in

SORNA but absent from the "immigration-related Adam Walsh Act amendments."  (Pls.' Opp'n

at 26.)  Plaintiffs interpret the Adam Walsh Act's protections as focused on children rather than

the broader public.  (*Id*.)  The integrated nature of the Adam Walsh Act disproves Plaintiff's

arguments on this point.

The language of the statute provides the starting point for statutory construction

arguments such as this, *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987), and legislative

purpose is expressed by the ordinary meaning of the words used.  *See INS v. Phinpathya*, 464

U.S. 183, 189 (1984).  Significantly, the term "specified offense against a minor" is defined

solely within the SORNA provisions of the Adam Walsh Act and not elsewhere within the

statute.  Thus, an ordinary plain reading dictates that the immigration-specific and SORNA

provisions were to be read in tandem; one cannot define "specified offense against a minor"

without reference to SORNA.  And the statute, by its plain terms, applies to all petitioners who

have been convicted of a specified offense against a minor if they file a petition on behalf of an

alien beneficiary for a family-based immigrant visa.  *See* 8 U.S.C. § 1154(a)(1)(A)(viii); 42

U.S.C. § 16911(7).  Given the integrated nature of the statute, it cannot be limited to child

beneficiaries; it applies to all family-based petitions.  *See* 8 U.S.C. § 1154(a)(1)(A)(viii).  Unless

USCIS determines that the petitioner poses "no risk" to the beneficiary or derivative beneficiary,

the petitioner is prohibited from having a petition granted on behalf of any family-based

beneficiary.  For these reasons, USCIS appropriately draws on the entire statute in applying it to

visa petition determinations.

Moreover, even if the statutory scope were ambiguous, the Court should defer to

USCIS's application of the statute to all family-based petitions involving petitioners with

convictions for specified offenses.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,

467 U.S. 837, 843-44 (1984); *Barnhart v. Walton*, 535 U.S. 212, 218 (2002) (explaining that

statutory silence "creates ambiguity").  The government has a legitimate interest in protecting all

visa beneficiaries, and in preventing any future crime by child sex offenders.  As demonstrated

by the provisions of the Adam Walsh Act, Congress saw a need to deter sex offenders from

petitioning for aliens who could become future victims.  Preventing sex offenders who have

previously victimized children from obtaining family-based visas, unless the offender can show

he or she poses "no risk" to the beneficiary, is a reasonable means for achieving the goal of

protecting the public against sex offenders.  Plaintiffs are entitled to argue that that is an overly

protective measure, but to warrant deference, the agency is not required to choose the best

solution – only a reasonable one in terms of the goals of the statute.  *See Nat'l Mining Ass'n v.

Kempthorne*, 512 F.3d 702, 709 (D.C. Cir. 2008).  Thus, even if the statute is ambiguous in terms

of scope, the Court should defer to USCIS's reasonable interpretation that it applies not just to

petitions with children among the beneficiaries but to petitions generally and with the protection

of the foreign national beneficiary and the greater public in mind.

The Court should reject Plaintiffs' argument that Aygul Minigalina's unlawful presence in the United States, where she lives with Struniak, shows that the Adam Walsh Act has no benefits when applied to adult beneficiaries.  (Pls.' Opp'n at 27, 32.)  First, by seeking to preclude the application of the Adam Walsh Act in her case based on her co-habitation with Struniak, Minigalina improperly seeks to benefit from her unlawful presence in the United States.  *See United States v. Garcia*, No. 08-cr-81, 2008 WL 2856753, at *11 (M.D. Fla. July 22, 2008) (holding that alien should not benefit when it is his own "deception and misinformation [that] delay[s] the immigration authorities' discovery of the defendant's illegal presence rather than a lack of diligence on the part of these officials").  Second, the fact that Struniak has apparently not yet harmed his beneficiary has no relevance to the general policy behind the Adam Walsh Act.  The reasonable goal of the Adam Walsh Act in protecting all members of the public from sex-offenders should dictate the result here, even if the concerns that USCIS identified are absent, or have not manifested yet, in Plaintiffs' particular case. *See Negusie v. Holder*, 555 U.S. 511, 534 (2009) (Stevens, J., concurring in part and dissenting in part) ("The BIA's formulation of a test to apply the statutory standard in individual cases and its application of that test in respondent's case were precisely the sort of agency actions that merited judicial deference.").

### C.      The Adam Walsh Act as applied here is not impermissibly retroactive.

Plaintiff contends that Defendants' application of the Adam Walsh Act's review provisions to his visa petition "take[s] away Plaintiff's 'vested rights' based on a conviction he acquired in 1991" and "penalizes him for an entirely past act which he is helpless to undo." (Pls.' Opp'n at 30, 31 (citations and internal quotation marks omitted).  The Court should reject his mistaken attempts to distinguish Defendants' cited cases.  (*Id.* at 29-32 (citing *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 (2006); *Coal. for Common Sense in Gov't Procurement v.*

*United States*, 707 F.3d 311, 318 (D.C. Cir. 2013); *Boniface v. Dep't of Homeland Sec.*, 613 F.3d 282 (D.C. Cir. 2010)).)   Plaintiffs' arguments attempting to distinguish those decisions are misplaced, as each is instructive in reviewing Defendants' pending motion.

    *Fernandez-Vargas* is helpful in distinguishing between actions Struniak can control and those he cannot.  As a starting point, it is important to recall that Struniak's filing of the petition, and not the Adam Walsh Act, initiates the burden Plaintiff challenges with this lawsuit.  Without a petition, no burden arises.  *Fernandez-Vargas* provides an analogous point of comparison, distinguishing between what the retroactivity claimant there could control and what he could not.  *See Fernandez-Vargas*, 548 U.S. at 44 ("While the law [allowing reinstatement of a previously executed deportation order] looks back to a past act in its application . . . the provision does not penalize an alien for the reentry (criminal and civil penalties do that); it establishes a process to remove him . . . .  Thus, it is the conduct of remaining in the country after entry that is the predicate action[.]").  A similar analysis applies here.  By petitioning for his wife, Struniak subjects himself to review of his petition under the Adam Walsh Act.  But the Act's attendant burdens, relating to the "specified offense" and "no risk" determinations, resulted only after Struniak has filed his petition.  Because Struniak has the choice of whether or not to petition for his wife, he cannot argue that the Adam Walsh Act's review provisions impose a "disability."

    Likewise, and again contrary to Plaintiffs' contention, *Coalition for Common Sense* is instructive in this matter.  There, the Court held that, given Congressional intent shown in the statute's language, liability under the statute attached to transactions made before the statute's enactment.  *See Coal. for Common Sense*, 707 F.3d at 318-19 (holding that section 703 "applies price caps to any prescription filled after the effective date" and that "refund liability" relative to the statute's price caps attached even if the "drug [was] sold by a manufacturer to a wholesaler

before the statute's effective date."). Applying *Coalition for Common Sense* here, Struniak's

burden – via vetting under the Adam Walsh Act's provisions once Struniak filed his petition –

attaches even though he committed his crime before the Adam Walsh Act's effective date.

      Finally, as to *Boniface*, Plaintiffs attempt to distinguish it by pointing to the "evidentiary

presumption" the Court identified there. The court found that the applicant was not categorically

barred from obtaining the driver's license he sought but faced a presumption that "is nonetheless

rebuttable and the disqualification hence merely provisional." *See Boniface*, 613 F.3d at 288.

Plaintiffs contend that no such "evidentiary presumption" is at issue here but that he actually

faces a "de facto 'bar'" to petitioning for a family member's visa. (Pls.' Opp'n at 31.) That

contention, however, ignores the undisputed administrative procedural history of this matter,

including both the Adam Walsh Act-related evidence Defendants requested from Plaintiff and

the material Plaintiff submitted in response. The evidence Struniak submitted in attempt to meet

his burden under the Adam Walsh Act is akin to the evidence in *Boniface* relating to the

regulation-based waiver at issue there. *See Boniface*, 613 F.3d at 286-88. Just as the *Boniface*

court found no retroactivity when the government relied on information predating enactment of

the rule at issue to determine a regulated party's eligibility for benefits sought after enactment of

the rule, this Court likewise should find that no retroactivity attaches when Defendants rely on

Struniak's pre-Adam Walsh Act conviction information to determine his eligibility for the

petition he now seeks after enactment of the Adam Walsh Act.

      **D.**      **This case implicates neither the right to marriage nor *Obergefell*.**

      Plaintiffs, finally, argue that *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), supports their

argument that they possess a liberty interest in living together in the United States. (Pls.' Opp'n

at 33-34.) *Obergefell* does no such thing. *Obergefell* addressed the right of same-sex couples to

marry.[1]  Plaintiffs' right to marry, however, is not at issue here.  At issue is Plaintiffs claim that

their marriage trumps otherwise valid immigration restrictions.  *Obergefell*, therefore, is not

inconsistent with controlling circuit precedent holding that constitutional rights to marriage are

not implicated when one spouse is removed or denied entry into the United States pursuant to the

Immigration and Nationality Act.  *See Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958);

*Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 105-06 (D.D.C. 2011) (citing *Swartz* and its

progeny).

## CONCLUSION

Plaintiffs have failed to provide valid objections to Defendants' motion to transfer venue

of this action to the U.S. District Court for the Eastern District of Virginia.  The Court should,

therefore, transfer this matter to that court.  Alternatively, if the Court denies Defendants' venue

transfer motion, the Court should dismiss the Complaint for lack of jurisdiction under Federal

Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6).

---

[1]  *See Obergefell*, 135 S. Ct. at 2604-05 ("The Court now holds that same-sex couples may exercise the fundamental right to marry.  No longer may this liberty be denied to them.  *Baker v. Nelson* must be and now is overruled, and the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples.").

Date:  October 5, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Assistant Director

By:    */s/ Hans H. Chen*
HANS H. CHEN
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-307-4469 (tel); 202-305-7000 (fax)
hans.h.chen@usdoj.gov

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, October 5, 2015, I filed the foregoing document and any

attachments thereto through the Court's CM/ECF system, which will on this day serve a copy of

the same upon all parties registered with the Court's CM/ECF system in this case.

Dated:  October 5, 2015        By:        */s/  Hans H. Chen*
                                          HANS H. CHEN
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Civil Division
                                          Office of Immigration Litigation
                                          District Court Section